

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-1995

# Pennsylvania Higher Education Assistance Agency v. Faish

Precedential or Non-Precedential:

Docket 95-7178

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Pennsylvania Higher Education Assistance Agency v. Faish" (1995). *1995 Decisions.* Paper 298.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/298

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-7178


IN RE:  MARJORIE JO FAISH,

Debtor

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY

v.

MARJORIE JO FAISH,

Appellant


On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. No. 94-cv-01353


Submitted Pursuant to Third Circuit LAR 34.1(a)
October 19, 1995
BEFORE:  SCIRICA, COWEN and ROTH
<u>Circuit Judges</u>

(Filed  November 28, l995)

Marjorie Jo Faish
4237-D Williamsburg Drive
Harrisburg, PA  17109

        Appellant Pro Se

K. Kevin Murphy
Pennsylvania Higher Education
 Assistance Agency
1200 North 7th Street
Harrisburg, PA  17102

        Counsel for Appellee
        Pennsylvania Higher Education
         Assistance Agency

**OPINION**

COWEN, <u>Circuit Judge</u>.


In this case we must decide whether appellant Marjorie Jo Faish is entitled to have her student-loan obligation discharged in a Chapter 7 bankruptcy proceeding. If Faish can establish that repayment of her student-loan debt would result in "undue hardship" under § 523(a)(8)(B) of the Bankruptcy Code, she is entitled to have her entire debt discharged. 11 U.S.C. § 523(a)(8)(B).

The Bankruptcy Court for the Middle District of Pennsylvania, citing equitable considerations, held that Faish need repay only $15,000.00, less than half of her loan obligation. On appeal, the District Court for the Middle District of Pennsylvania, applying a modified version of the "undue hardship" test set forth in <u>In re Johnson</u>, 5 Bankr. Ct. Dec. 532 (Bankr. E.D. Pa. 1979), reversed the bankruptcy court. The district court held that because Faish had failed to establish that the repayment of her entire student-loan obligation would impose "undue hardship," no discharge was appropriate here.

We must also decide what legal standard bankruptcy courts within the Third Circuit will now apply when they consider whether the facts presented give rise to "undue hardship," as that term is to be construed under § 523(a)(8)(B). This area of the law is presently in a state of considerable confusion, with

2

bankruptcy courts within our Circuit applying a broad range of standards.[1]

For the reasons stated herein, we adopt the standard for "undue hardship" set forth by the Court of Appeals for the Second Circuit in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987) (per curiam). Pursuant to this standard, although different from the one applied by the district court below, we will affirm the district court's order that Faish's student-loan debt must be deemed nondischargeable in its entirety.

## I.

Marjorie Jo Faish obtained a Master's Degree in Public Health and Community Health Services Administration from the University of Pittsburgh in 1989. To help defer the costs of her education, Faish obtained $31,879.31 in guaranteed student loans from the Pennsylvania Higher Education Assistance Agency ("PHEAA").

---

[1] The Bankruptcy Court for the Western District of Pennsylvania's recitation of the following bankruptcy court decisions that have developed separate tests "to determine whether the facts of a case constitute undue hardship" is indicative of the current uncertainty. See In re Correll, 105 B.R. 302, 305 (Bankr. W.D. Pa. 1989) (citing Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987) (per curiam); In re Conner, 89 B.R. 744 (Bankr. N.D. Ill. 1988); In re Bryant, 72 B.R. 913 (Bankr. E.D. Pa. 1987); In re Craig, 64 B.R. 854 (W.D. Pa. 1986); In re Johnson, 5 Bankr. Ct. Dec. 532 (Bankr. E.D. Pa. 1979)).

Under the terms of the loan agreements, Faish was required to commence payments on her student-loan obligation on October 1, 1991.

On September 27, 1993, Faish filed a Chapter 7 bankruptcy petition with the Bankruptcy Court for the Middle District of Pennsylvania. On the same day, Faish filed a complaint to determine the dischargeability of her student loan debt to PHEAA. A trial on the issue of dischargeability was conducted on December 22, 1993.

On July 12, 1994, the bankruptcy court rendered its decision, making the following factual findings. See In re Faish, No. 93-01686, slip op. at 2-3 (Bankr. M.D. Pa. July 12, 1994). Faish has a job working for the Commonwealth of Pennsylvania in the Department of Public Welfare, Bureau of Financial Operations, as a budget analyst. She earns a yearly gross salary of approximately $27,000.00. Faish does not own an automobile and commutes to and from work by bus. She has been unsuccessful in her pursuit of a higher-paying job.

Faish is thirty-years-old, unmarried and has an eleven-year-old son. Faish does not receive any child support payments from the father of her child. She is concerned about the quality of the neighborhood and school district that she lives in and is now saving money for an automobile and a new apartment in a better area.

Faish suffers from Crohn's disease, a chronic condition affecting the bowel. She also has back problems. The bankruptcy

4

court found, however, that although Faish's health problems are "significant," they "are not interfering with her ability to work." Id. at 5.

Faish's original principal debt to PHEAA amounted to $31,879.31. From November 13, 1991, through June 2, 1993, Faish repaid $4,629.92 of her loan obligation. As of September 1993, Faish owed PHEAA $32,989.33. Id. at 2.

After setting forth these factual findings, the bankruptcy court observed that "[o]ur district court has adopted the test for undue hardship set forth in In re Johnson . . . . The Johnson test divides the undue hardship inquiry test into three prongs: a mechanical test, a good faith test, and a policy test." Id. at 4. Applying the first prong of the Johnson test, the bankruptcy court concluded that "Faish has failed to establish a lack of a financial ability to repay for the foreseeable future and therefore fails the mechanical prong of the Johnson test." Id. at 5.

Although the Johnson court expressly held that if a student-loan debtor fails to satisfy the mechanical test, "discharge of the student loan must be denied," Johnson, 5 Bankr. Ct. Dec. at 544, the bankruptcy court below went on to apply Johnson's good faith and policy tests. As to the Johnson "good faith" test, the bankruptcy court found that Faish had "established a sufficient degree of good faith." Faish, No. 93-01686, slip op. at 6. However, Faish failed the "policy test" because "avoidance of the obligation was a significant consideration in the filing." Id.

5

Even though Faish had failed the Johnson "undue hardship" test, the bankruptcy court went outside the Johnson framework and considered what it deemed to be equitable considerations. The court cited a bankruptcy court decision from another jurisdiction, Woyame v. Career Education & Management (In re Woyame), 161 B.R. 198 (Bankr. N.D. Ohio 1993), as authority for the proposition that bankruptcy courts have "some latitude in the amount of the nondischargeability determination even where individual prongs of the Johnson test are not met on their face." Faish, No. 93-01686, slip op. at 7.

The bankruptcy court concluded that "[b]ased upon the equities involved, Faish will be given partial relief." Id. at 8.[2] The court observed that it was "especially influenced . . . by Faish's need to support a young dependent, and her desire to accumulate some savings in order to provide a better life for him." Id. at 7-8. Accordingly, the bankruptcy court held that "$15,000.00 of Faish's student loan debt will be deemed to be nondischargeable, and the remainder of the obligation, including

---

[2] The bankruptcy court reached this conclusion despite its earlier findings that

> Faish's current employment and income are good, as are her future employment and income prospects. Although a payment to PHEAA of nearly $300.00 impacts significantly upon Faish's disposable income, it does not place her or her son below the subsistence level. Indeed, Faish has managed to incorporate a savings component into her expenses, which is rare in my experience among debtors applying for dischargeability based upon undue hardship. Additionally, Faish's degree qualifies her for promotion and/or more favorable employment.

In re Faish, No. 93-01686, slip op. at 5 (Bankr. M.D. Pa. July 12, 1994).

6

accrued and future interest, will be deemed to be dischargeable." Id. at 8.

On February 21, 1995, the District Court for the Middle District of Pennsylvania issued a memorandum opinion reversing the bankruptcy court. The district court expressly rejected the bankruptcy court's assumption that it was bound by Johnson. Faish, No. 94-1353, slip op. at 4 n.2 (M.D. Pa. Feb. 21, 1995). The district court noted, however, that while it "would not rigidly confine itself to Johnson's tripartite analysis," it would abide by Johnson's "general framework." Id. at 4.

The district court observed that it was "the bankruptcy judge's step beyond Johnson which has given rise to PHEAA's appeal." Id. at 6. The district court then reviewed the propriety of the bankruptcy judge's consideration of equitable factors not contemplated by Johnson's three-pronged inquiry. The court stated in dictum that "the bankruptcy court must be prepared to move beyond Johnson to the extent that the Johnson analysis fails to capture scenarios requiring some form of student debt relief to alleviate undue hardship." Id. at 7. However, "the circumstances necessary to justify discharge must be unusual, and the hardship faced in the event of full repayment must be substantial." Id. Citing Faish's favorable employment prospects, the court concluded that "the continued viability of governmentally guaranteed student loans is simply incompatible with discharging student debt on the instant facts." Id. at 7-8. Accordingly, the district court ordered that "Faish's student

debt must be deemed nondischargeable in its entirety." Id. at 8. This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 158(d). Our review of the district court's interpretation of the Bankruptcy Code is plenary. Leeper v. Pennsylvania Higher Educ. Assistance Agency, 49 F.3d 98, 100 (3d Cir. 1995); In re Pelkowski, 990 F.2d 737, 739 (3d Cir. 1993). The debtor has the burden of demonstrating undue hardship. Woodcock v. Chemical Bank, NYSHESC (In re Woodcock), 45 F.3d 363, 367 (10th Cir.), cert. denied, 64 U.S.L.W. 3241 (U.S. 1995); In re Roberson, 999 F.2d 1132, 1137 (7th Cir. 1993).

## III.

Section 523(a)(8)(B) of the Bankruptcy Code provides as follows:
    (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
    . . .
    (8)  for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless--
    (A)  such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
    (B)  excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8)(B) (emphasis added).

8

Section 523(a)(8)(B) was passed as part of the Bankruptcy Reform Act of 1978. As one commentator has explained, the "undue hardship" exception of § 523(a)(8)(B)

> is difficult to apply because the drafters of the Bankruptcy Code did not define undue hardship. The drafters said that bankruptcy courts must decide undue hardship on a case-by-case basis, considering all of a debtor's circumstances. Looking for guidance in the undue hardship cases, the bankruptcy courts have shaped facts and circumstances tests of undue hardship by relying on the legislative history of section 523(a)(8).

Kurt Wiese, Note, Discharging Student Loans In Bankruptcy: The Bankruptcy Court Tests of "Undue Hardship," 26 Ariz. L. Rev. 445, 447 (1984) (hereinafter Wiese, Undue Hardship).

Examining the Congressional Record in order to discern the legislative purpose behind the enactment of § 523(a)(8)(B), we observed in In re Pelkowski that "the debate in the main focused on the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors." Pelkowski, 990 F.2d at 743. Thus, the Pelkowski court expressed agreement with the conclusion of the Court of Appeals for the Sixth Circuit that "Congress enacted 11 U.S.C. § 523(a)(8) in an effort to prevent abuses in and protect the solvency of educational loan programs." Id. (quoting In re Merchant, 958 F.2d 738, 742 (6th Cir. 1992)).

The Pelkowski court held that "[t]he Congressional intent to eliminate debtor abuse of the educational loan program would apply both to single makers of loan notes and to co-makers, whether students or their parents or other co-signers, as all may abuse the bankruptcy system or take advantage of legal

9

loopholes." Pelkowski, 990 F.2d at 744. The court concluded that "Congress has revealed an intent to limit the dischargeability of educational loan debt, and we can construe the provision no more narrowly than the language and the legislative history allow." Id. at 745. See Darrell Dunham & Ronald A. Buch, Educational Debts Under the Bankruptcy Code, 22 Mem. St. L. Rev. 679, 702 (1992) (hereinafter Dunham & Buch, Educational Debts) ("Congress clearly intended that most educational debt still due within seven years of graduation should be nondischargeable.").

**IV.**

**A.**

Before we address the merits of Faish's petition, we must decide which of the several "undue hardship" tests should be applied in the present matter. As one commentator has explained, "[b]ankruptcy courts use a wide variety of tests to determine whether the debtor has demonstrated undue hardship. While these tests have received varying degrees of acceptance, no particular test authoritatively guides or governs the undue hardship determination." Thad Collins, Note, Forging a Middle Ground: Revision of Student Loan Debts in Bankruptcy as an Impetus to Amend 11 U.S.C. § 523(a)(8), 75 Iowa L. Rev. 733, 744 (1990). Due to this lack of a "unified approach to undue hardship, litigants are in the difficult position of not knowing which standard will govern their case. Consequently, effective presentation of evidence on undue hardship is made difficult unless the jurisdiction has definitively and unequivocally

10

adopted one test and a consistent set of determinative factors." Id. at 747. It is to this task that we now turn.

The three most prominent tests applied to determine whether the "undue hardship" exception of § 523(a)(8)(B) should be invoked are the Johnson test, the Bryant test and the Brunner test. The Johnson and Bryant tests have been described as "the two most prominent tests" bankruptcy courts have applied to decide whether the "undue hardship" exception should apply. Dunham & Buch, Educational Debts, supra, at 695. The Brunner test has been adopted by a majority of the Courts of Appeals that have specifically addressed the issue of what single standard should be applied to determine whether "undue hardship" exists under 11 U.S.C. § 523(a)(8)(B). See Brunner, 831 F.2d at 395 (setting forth the Brunner test); In re Roberson, 999 F.2d 1132 (7th Cir. 1993) (adopting the Brunner test); see also Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman), 25 F.3d 356 (6th Cir. 1994), cert. denied, 115 S. Ct. 731 (1995) (applying the Brunner test). We will now discuss in detail the content and respective merits of these three "undue hardship" standards.

### 1.  The Johnson Test

The tripartite Johnson test was set forth by the Bankruptcy Court for the Eastern District of Pennsylvania in In re Johnson, 5 Bankr. Ct. Dec. at 532. The Johnson test provides as follows:

> In determining whether the undue hardship exception entitles a specific debtor to discharge of his student loan, a court should rely on three tests:
>     (1) Mechanical Test:  The court must ask:  Will the debtor's future financial resources for the longest

foreseeable period of time allowed for repayment of the loan, be sufficient to support the debtor and his dependents at a subsistence or poverty standard of living, as well as to fund repayment of the student loan? If the question is answered affirmatively, discharge of the student loan must be denied. If answered negatively, then the court must apply the good faith test:

(2) Good Faith Test: Here, the court asks two questions:

(a) Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources, or secure employment?

(b) If "yes," then would lack of such negligence or irresponsibility have altered the answer to the mechanical test?

If the answer to the first part of the good faith test is no, then the debtor should be discharged of the obligation to repay his student loan. However, if the answers to both parts of the good faith test are "yes," then a presumption against discharge is established--which may be rebutted by a negative answer to the third and final test.

(3) . . . Policy Test: The court must ask: Do the circumstances--i.e., the amount and percentage of total indebtedness of the student loan and the employment prospects of the petitioner indicate:

(a) That the dominant purpose of the bankruptcy petition was to discharge the student debt, or

(b) That the debtor has definitely benefitted financially from the education which the loan helped to finance?

If the answer to both parts of this question is a firm "no," then the debtor should be discharged from his student loan obligation. If the court answers "yes" to either part of the question, then discharge should be denied.

Id. at 544.

Johnson's tripartite analysis appears to be both unnecessarily complicated and unduly cumbersome. When Johnson is applied correctly, however, most petitions will be denied after the mechanical test is applied. Thus, in this sense, the Johnson test is in accord with our recognition of the Congressional

12

objectives of preventing abuse of the bankruptcy process and protecting the financial integrity of the student loan program. Pelkowski, 990 F.2d at 743-44. Similarly, both the good faith and policy tests provide additional protection against abuse of the student loan program. The Johnson test, by its terms, contains no provision that would permit bankruptcy courts to negate a finding of nondischargeability based upon an assessment of other "equitable considerations" that may be deemed to be relevant.

## 2. The Bryant Test

The Bryant test was set forth by the Bankruptcy Court for the Eastern District of Pennsylvania eight years after Johnson was decided. In re Bryant, 72 B.R. 913 (Bankr. E.D. Pa. 1987). The Bryant court criticized the three-part Johnson test as "unfortunately complicated" and promulgated an alternative test for "undue hardship." Id. at 915 n.2. The Bryant court explained its standard in the following terms:

> The test which we propose strives to place the element of objectivity into the process of decision-making in this area. We propose, as a starting position, to analyze the income and resources of the debtor and his dependents in relation to federal poverty guidelines established by the United States Bureau of the Census and determine the dischargeability of the student loan obligation on the basis of whether the debtor's income is substantially over the amounts set forth in those guidelines or not. If not, a discharge will result only if the debtor can establish "unique" and "extraordinary" circumstances which should nevertheless render the debt dischargeable. If the debtor's income is below or close to the guideline, the lender can prevail only by establishing that circumstances exist which render these guidelines unrealistic, such as the debtor's failure to maximize his resources or clear prospects of the debtor for future income increases. We feel that such a test will decrease, if not eliminate the resort to the

13

> unbridled subjectivity which seems to pervade many of the decisions in this area.

Id. at 915. Elaborating upon its new "undue hardship" exception standard, the bankruptcy court observed that "[w]e find ourselves in disagreement with those courts which have denied discharges of student loans on the basis of whether any given expenses are justified, as these represent subjective value judgments concerning which we consider ourselves no better able to gauge than, generally, debtors themselves." Id. at 918.

We expressly reject and depart from this reasoning and analysis. The Bryant test's refusal (or at least extreme reluctance) to question whether certain expenses debtors have incurred can be justified seems inconsistent with Congress' dual legislative goals of "eliminat[ing] debtor abuse of the educational loan program" and "preserv[ing] the fiscal integrity of the student loan program." Pelkowski, 990 F.2d at 744. The Bryant test does not adequately account for the fact that one of the most common reasons student-loan debtors find themselves in bankruptcy court is that their "subjective value judgments" are often (but not always) indicative of a spendthrift philosophy which a bankruptcy court should be competent to consider before discharging their student loans.

The Bryant court also expressed disagreement with the first inquiry of the Johnson "policy test," which asks if "the dominant purpose of the bankruptcy petition was to discharge the student debt." Johnson, 5 Bankr. Ct. Dec. at 544. The Bryant court declared that since "avoiding the consequences of debts is

14

normally the reason for filing for bankruptcy . . . the fact that the Debtor seeks to discharge almost exclusively student loan obligations . . . should be irrelevant." Bryant, 72 B.R. at 915 n.2. We disagree. The purpose behind the debtor's bankruptcy petition is not irrelevant in this context because one of the reasons that Congress enacted § 523(a)(8)(B) was in response to "reports of students discharging student loan debts after graduation and subsequently accepting high-paying jobs." Wiese, Undue Hardship, supra, at 446. See Brunner, 831 F.2d at 396 (Congress intended "to make the discharge of student loans more difficult than that of other nonexcepted debt."). For these reasons, we decline to adopt the Bryant test.

### 3.  The Brunner Test

As the Court of Appeals for the Second Circuit has observed, before Brunner was decided there was "very little appellate authority on the definition of `undue hardship' in the context of 11 U.S.C. § 523(a)(8)(B)." Brunner, 831 F.2d at 396. Relying upon the reasoning of the district court below,[3] the Brunner court set forth the following three-part test for the "undue hardship" exception:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

---

[3]  See 46 B.R. 752 (Bankr. S.D.N.Y. 1985), aff'd, 831 F.2d at 395.

15

Id.

The Court of Appeals for the Seventh Circuit formally adopted the Brunner test in In re Roberson, 999 F.2d at 1132. In Roberson, both the bankruptcy court and the district court below had applied the three-part Johnson test. After expressly rejecting the Johnson test and giving the Brunner test its imprimatur, the Seventh Circuit described how the Brunner test should properly be applied.

The Roberson court observed that "[t]he first prong of Brunner requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." Id. at 1135. The court admonished that the other prongs of the Brunner test should not be examined if the first prong has not been satisfied. Id.

The second prong of the Brunner test requires "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." Brunner, 831 F.2d at 396. The Roberson court observed that this requirement "properly recognizes the potential continuing benefit of an education, and imputes to the meaning of `undue hardship' a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period." Roberson, 999 F.2d at 1135.

The third prong of the Brunner test is the good faith inquiry. The Roberson court noted that the question of good faith

16

should only be reached if the debtor has satisfied the first two elements. See id. at 1136.  The good faith inquiry is to be guided by the understanding that "undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from `factors beyond his reasonable control.'"  Id. (quoting Comm'n on the Bankruptcy Laws of the United States, Report, [H.R. Doc. No. 137, 93d Congress, 1st Sess., Pt. II], at 140 n.16).

The Roberson court rejected the second prong of the Johnson "policy test," which considers "whether the debtor `has definitely benefitted financially from the education which the loan helped to finance.'"  Id. at 1136 (quoting Johnson, 5 Bankr. Ct. Dec. at 544).  The court observed that "[s]uch an inquiry conflicts with the basic concept of government-backed student loans."  Roberson, 999 F.2d at 1136.

The Seventh Circuit cited the Southern District of New York's statement in Brunner that federal student loan programs were not designed to "turn[] the government into an insurer of educational value."  Id. (quoting Brunner, 46 B.R. 752, 756 n.3 (S.D.N.Y. 1985)).  Students who benefit from guaranteed loan programs normally "would not be eligible to receive any financing or only financing at a higher rate of interest . . . ." Roberson, 999 F.2d at 1136.  Since "[t]he decision of whether or not to borrow for a college education lies with the individual," it is "the student, not the taxpayers, [that] must accept the consequences of the decision to borrow."  Id. at 1137.

17

We agree with the Seventh Circuit's analysis and we offer another criticism of the Johnson test. Johnson is needlessly verbose and multifaceted. Its multiple tests and the subsidiary questions required to be answered thereunder do not provide the required clear statement of what the law is. For these reasons, we decline to adopt the Johnson "undue hardship" test as the law of this Circuit.

**B.**

Of the three tests that we have considered, Brunner is the most consistent with the scheme that Congress established in 1978. The Brunner standard meets the practical needs of the debtor by not requiring that he or she live in abject poverty for up to seven years before a student loan may be discharged. On the other hand, the Brunner standard safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices.

The Brunner test is the most logical and workable of the established tests. Analysis under Brunner is not hampered either by the flawed Johnson "policy test" or the unwarranted deference with which the Bryant test reviews the personal spending habits of student-loan debtors. Brunner's concise formulation is both easier to follow and to apply than Johnson's. We therefore hold that the Brunner "undue hardship" test must now be applied by bankruptcy courts within the Third Circuit.

18

Brunner now provides the definitive, exclusive authority that bankruptcy courts must utilize to determine whether the "undue hardship" exception applies. Student-loan debtors have the burden of establishing each element of the Brunner test. All three elements must be satisfied individually before a discharge can be granted. If one of the requirements of the Brunner test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability. See id. at 1135. Equitable concerns or other extraneous factors not contemplated by the Brunner framework may not be imported into the court's analysis to support a finding of dischargeability. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S. Ct. 963, 969 (1988) ("whatever equitable powers remain in the bankruptcy courts can only be exercised within the confines of the Bankruptcy Code").

Applying the factual findings of the bankruptcy court below, we now must determine whether Faish has satisfied her burden of establishing that repayment of her student-loan obligation would impose an "undue hardship" upon her.[4] Applying the first prong of the Brunner test, we must determine whether Faish "cannot maintain, based on current income and expenses, a `minimal' standard of living for herself and her dependents if forced to repay the loans." Brunner, 831 F.2d at 396.

---

[4] We conclude that sufficient facts appear in the record to enable us to perform the Brunner analysis. Remand, therefore, is unnecessary.

The bankruptcy court found that Faish was employed by the Commonwealth of Pennsylvania, Department of Public Welfare, Bureau of Financial Operations, as a budget analyst at the time of trial. She earned a gross yearly salary of $27,000.00 in 1993. The court found that "Faish's current employment and income were good," and that while "a payment to PHEAA of nearly $300.00 [per month] impacts significantly upon Faish's disposable income, it does not place her or her son below the subsistence level." Faish, No. 93-01686, slip op. at 5.

The first prong of the Brunner analysis requires more than a showing of tight finances. Faish has failed to establish through evidence presented at trial that, based upon her current income and expenses, she could not maintain a minimal standard of living if forced to repay her loans. Therefore, we conclude that Faish has failed to satisfy the first element of the Brunner test. Accordingly, we need not decide whether she would have satisfied the second and third elements of our new standard. We therefore hold that Faish's entire student-loan obligation is nondischargeable.

Although Faish has a steady job, she argues that her inability to find a job in her chosen field militates in favor of discharge. In response to a similar claim, the Southern District of New York in Brunner denied a discharge in bankruptcy to a student-loan debtor who was far less fortunate than Faish. The student-loan debtor in Brunner entered college in 1972. She received a "Bachelor's degree in Psychology in 1979 and a Master's degree in social work in 1982." Brunner, 46 B.R. at

20

756. Appellee Marie Brunner "testified that she had sent out `over a hundred' resumes in search of employment in her chosen field." Id. at 757. Nonetheless, upon graduation Brunner was unable to find work and at the time of her hearing she had been supporting herself on public assistance for a period of four months. Id. In the decade prior to her bankruptcy hearing, Brunner's "greatest annual income was $9,000." Id. at 756.

Despite Brunner's inability to find work, the district court held that she had failed to satisfy the first prong of the Brunner test, which the court itself had just articulated. The district court observed that Brunner

> appears to be a woman who is unlikely to find a job in her chosen field of work in the near future. However, she is an apparently healthy, presumably intelligent, and well-educated woman. Although she claimed to be unable to find any other type of work, the evidence presented at the hearing is too thin to support a finding that her chances of finding any work at all are slim . . . . She has no dependents or any other extraordinary burdens which would impair her finding other work, or, once it is found, make it unlikely that she can both support herself and pay off her student loans.
>
> In short, appellee at most proved that she is currently--or was at the time of the hearing--unable both to meet her minimal expenses and pay off her loans. This alone cannot support a finding that the failure to discharge her loans will impose undue hardship. (citations omitted). Nothing in the record supports a finding that it is likely that her current inability to find any work will extend for a significant part of the repayment period of the loan or that she has "a total incapacity now and in the future to pay [her] debts for reasons not within [her] control." (quoting In re Rappaport, 16 B.R. 615, 617 (Bankr. D.N.J. 1981)).

Id. at 757-58.

21

Today we adopt the reasoning of the Second Circuit. A comparison of the facts in Brunner and Faish is telling. The financial straits of the bankruptcy petitioner in Brunner appear to have been far more serious than any short-term, belt-tightening that may be required of Faish in order to repay her student-loan obligation.

Faish does not satisfy the standard that we set forth today. Moreover, full nondischargeability is especially appropriate here because, in essence, Faish was asking the bankruptcy court to allow a discharge of her student-loan obligation so that she could devote the money (which could otherwise have been earmarked for student loan payments) to savings for the purchase of a new car and to settle into a new apartment. Cf. Matthews v. Pineo, 19 F.3d 121, 124 (3d Cir.), cert. denied, 115 S. Ct. 82 (1994) (NHSC scholarship recipient's "current income and . . . expenses should [not] be regarded as unalterable. Instead, the proper inquiry is whether it would be `unconscionable' to require [the debtor] to take any available steps to earn more income or to reduce her expenses.").

## VI. CONCLUSION

For the foregoing reasons, we adopt the Brunner "undue hardship" standard to determine whether student-loan debt can be discharged pursuant to 11 U.S.C. § 523(a)(8)(B). We further hold that Faish has failed to satisfy her burden to establish undue hardship under the Brunner standard and that her entire student-loan obligation is nondischargeable. The judgment of the district court will be affirmed.