**In re Audeliz RIVERA, Debtor.**

**Audeliz Rivera, Plaintiff,**

**v.**

**New Jersey Higher Education Student Assistant Authority [NJHESAA], Defendant.**

**Bankruptcy No. 01–58643.**
**Adversary No. 01–5493.**

United States Bankruptcy Court, D. New Jersey.

Oct. 8, 2002.

Edward Brinkman, Union County Legal Services Corp., Elizabeth, NJ, for the Debtor/Plaintiff, Audeliz Rivera.

Amina Maddox, State of New Jersey, Deputy Attorney General, Trenton, NJ, for NJHESAA.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY

The debtor filed a voluntary Chapter 7 petition on July 24, 2001. On October 15, 2001 he filed an adversary complaint seeking a hardship discharge of approximately $5,703.00 in student loans pursuant to § 523(a)(8)(B). A trial in this matter was held on August 15, 2002. The court permitted the parties to submit post hearing briefs and reserved opinion.

### JURISDICTION

The court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This adversary proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I). Venue is properly in this district pursuant to 28 U.S.C. § 1408.

### FACTUAL BACKGROUND

Presently before the court is the debtor's complaint seeking a hardship discharge of his student loans pursuant to 11 U.S.C. § 523(a)(8).

The debtor, Audeliz Rivera ["Rivera"] began a 1200 hour program at the Reignbow Beauty Academy in 1999. On April 14, 1999, Rivera obtained a student loan in the amount of $5,570.00 at an interest rate of 5.99% for a term of 120 months (10 years) to cover the costs of his tuition at the Academy. The loan was serviced by Sallie Mae, and the promissory note was assigned to the New Jersey Higher Education Student Assistance Authority ["NJHESAA"] in November of 2001. The debtor completed his course work and was graduated from the academy in January 2000. Monthly payments on Rivera's student loans began in August 2000. The debtor made timely payments from August 2000 until June 2001 in the amount of $66.98 per month.

Since his graduation, the debtor has been hired as a hairdresser at beauty salons. In each position, however, he has been let go within his probationary period of employment. Rivera has been unable to maintain his employment because he drops scissors and utensils, and he responds negatively to the chemicals which affect his

asthma. His memory loss causes him to forget what he is doing, and, on at least one occasion, he left a customer sitting in the chair in the midst of a haircut.

Rivera is currently under the care of Dr. Quintaia and is being treated for chronic asthma, memory loss, panic attacks, depression and multiple personality disorder. He is currently taking strong medications including Zanax, Ciparol and Albutorol. Rivera has been receiving social security disability income since 1991, and he receives food stamps. He has made it clear that his disabilities are permanent and he has been told not to work. He testified that he still tries to work, but finds himself unable to do so.

As a result of his conditions, Rivera is not capable of taking care of himself. He has friends who pay his bills, and handle his checkbook and accounting. Additionally, Rivera's friends and family walk and care for his dog.

## DISCUSSION

The law regarding a section 523(a)(8) "undue hardship" discharge is well settled in the Third Circuit. In, *Brightful v. Pennsylvania Higher Education Assistance Assoc.*, [PHEAA], 267 F.3d 324 (3d Cir.2001), the Third Circuit reaffirmed its earlier ruling in *In re Faish*, 72 F.3d 298 (3d Cir.1995), wherein the Circuit adopted a three prong test for determining whether or not a hardship exists as required by 11 U.S.C. § 523(a)(8)(B).[1]

The "undue hardship test" was established by the Second Circuit in *Brunner v. New York Higher Educ. Srvcs. Corp.*, 831 F.2d 395 (2d Cir.1987). It was adopted by the Third Circuit in *Faish, supra,* and requires a showing 1.) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; 2.) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and 3.) that the debtor has made a good faith efforts to repay the loans. *Faish,* 72 F.3d at 304–05. Moreover, the debtor bears the burden of establishing these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### First Prong: Standard of Living

Regarding the first prong, the Third Circuit, in both *Faish* and *Brightful* analyzed the debtor's income and expenses in determining whether the debtors maintained a minimal standard of living. *In re Faish,* 72 F.3d 298 (3d Cir.1995); *Brightful v. Pennsylvania Higher Education Assistance Assoc.* [PHEAA], 267 F.3d 324 (3d Cir.2001).

Rivera receives $561 per month in social security disability income and $134 per month in food stamps. His expenses are as follows:

---

1. § 523 Exceptions to discharge.
   (a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a gov-

ernmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; 11 U.S.C. § 523(a)(8).

| | |
|---|---|
| rent | $185 |
| electricity | $ 80 |
| gas | $ 30 |
| phone | $100 |
| credit card | $ 10 |
| pet care | $ 20 |
| laundry | $ 30–$ 45 |
| food | @ $ 70 (in addition to the food stamps) |
| total monthly expenses | $540 |

monthly income $561 − monthly expenses $540=$ 21

While Rivera owns a car, his parents bought it for him, and they pay for the insurance, maintenance and repairs for the car.

A review of Rivera's monthly income and expenses shows that after expenses, Rivera has $21.00 per month in income. Rivera's monthly student loan payment is $66.98. The debtor does not have enough income to pay his monthly student loan payments and maintain a minimal standard of living. Moreover, the debtor does not have any extra expenses, such as cable television, newspaper or magazine subscriptions that he could eliminate to enable him to make his student loan payments.[2] Based on the debtor's income and expenses, this court finds that the debtor cannot maintain a minimal standard of living if forced to repay the loans, because he does not have enough income to make his monthly payments and he does not have any excess expenses which could be eliminated.

**Second Prong: Present circumstances are likely to continue**

The second prong requires that additional circumstances exist indicating that the debtor's state of affairs is likely to continue. Here, the future benefit of the debtor's education is considered. *Brunner v. New York State Higher Education Ser-*

*vices Corp.*, 831 F.2d 395, 397 (2d Cir. 1987). Immediately upon graduation, a student loan may seem "burdensome … [but] in the long run a government financed education may generate substantial returns." *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993). For this reason, student loans are more difficult to discharge than are other forms of debt. *Id.* at 1136.

In analyzing the second prong, the Third Circuit held that it is not sufficient for a debtor to be in "financial straits" at the time of the requested discharge, "rather, [he] must prove a total incapacity … in the future to pay [his] debts for reasons not within [his] control." *Brightful*, 267 F.3d at 328, *citing, In re Faish* 72 F.3d at 307.

As a result of his medical conditions, Rivera is unlikely to receive a benefit in the future from his education. His disabilities began in 1991 and have continued since that time without signs of improvement. Presently, he is unable to hold a job for more than two months at a time. While he is able to find work as a hairdresser, once hired, he is unable to carry out his job responsibilities for several reasons. For example, he has shown that his chronic asthma is worsened by the strong chemical odors present in hair salons. His memory loss causes him to forget what he

**2.** As of June 2002, Rivera's total indebtedness to NJHESAA was $5703.67. One may argue that Rivera may be able to extend his loan term and lower his monthly payments, but this showing was not made by NJHESAA, and the fact that Rivera is on public assistance and is unable to work in any field of employment due to his disabilities suggests that even lower payments would cause undue hardship to Rivera.

is doing and, as indicated above he has even left a customer in a chair in the middle of a haircut. Not only is Rivera unable to work in his chosen field, he has been instructed by his doctor not to work in any field.

In addition to not being capable of maintaining employment, Rivera is unable to care for himself. His friends and family assist him in his daily living. One of his friends handles his checkbook and pays his bills for him. Other friends and family take care of walking and caring for his dog on a daily basis.

It is unlikely that Rivera will reap the benefits of his education in the future, because his condition, which precludes him from maintaining employment, has not improved and is not improving. Rivera's disabilities include chronic asthma, depression, memory loss and multiple personality disorder. He has been collecting social security disability income since 1991. Based on the foregoing, the court finds that Rivera is incapacitated at the present time, and that his disabilities are likely to continue into the future and throughout the loan repayment term for reasons not within his control.

### Third Prong: Good Faith efforts to repay

The third prong requires a court to consider how much of the debt has been repaid, when repayment began and whether or not the debtor has made an overall good faith effort to repay his loans. *Brunner*, 831 F.2d 395, 397.

As stated above, the monthly loan payments began 6 months after the debtor's graduation. He began making payments in August 2000, and continued to make timely payments until June 2001. The original loan amount was $5,570, plus interest. As of June 2002 the debtor owes $5,703.67 on the loan including interest, principal, late fees and counsel fees. Be-

cause the debtor began making his payments on time and made timely payments for 11 months, the court finds the debtor did make good faith efforts to repay the loan. Moreover, the debtor has made good faith efforts to find and to maintain employment, however, due to his disabilities he is unable to keep any job.

### CONCLUSION

Based on the above findings, the court finds that the debtor meets the three elements of the "undue hardship" test adopted by the Third Circuit. The debtor's request for a hardship discharge of his student loan obligations pursuant to 11 U.S.C. § 523(a)(8) is hereby **GRANTED**. The court will enter a standard order consistent with this opinion.