In re Melissa A. CARTER, Debtor.

Melissa A. Carter, Plaintiff,

v.

Commonwealth of Pennsylvania, Pennsylvania Higher Education Assistance Agency, Defendant.

Bankruptcy No. 01–11117.
Adversary No. 01–1047.

United States Bankruptcy Court, W.D. Pennsylvania.

July 17, 2003.

Jack E. Grayer, Erie, PA, for Debtor.

Byron F. Walker, Harrisburg, PA, for Defendant.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Melissa A. Carter ("Debtor") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on May 25, 2001. Before the Court is Debtor's Complaint to Determine Dischargeability of Certain Student Loan Obligations in the approximate amount of $13,120 (the "Student Loans") owed to Commonwealth of Pennsylvania, Pennsylvania Higher Education Assistance Agency ("PHEAA").[2] Debtor posits that a requirement that she repay her Student Loans creates an undue hardship under 11 U.S.C. § 523(a)(8). PHEAA opposes discharge.

A trial/evidentiary hearing was held on February 6, 2002. Following the conclusion of the trial, a decision was delayed to give Debtor an opportunity to explore the possibility of restructuring the obligations. By letter dated November 23, 2002, Debtor's counsel advised the Court that such restructuring was not a viable alternative.

PHEAA requested and was granted time to file a post-trial brief. After consideration of PHEAA's brief, by Order dated March 17, 2003, we determined that the obligations of the Debtor to PHEAA were dischargeable. PHEAA filed a Motion for Reconsideration of the March 17 Order which was refused by Order dated May 13, 2003. PHEAA subsequently filed a Notice of Appeal. We write to amplify upon the basis for our decision.

### Jurisdiction

We have jurisdiction over the instant matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2)(I).

### Facts

Debtor obtained a series of six student loans to attend classes at the Erie Business Center:

| Disbursement Date | Amount |
| --- | --- |
| 10/6/97 | $ 2,625 |
| 5/15/98 | 1,750 |
| 6/12/98 | 1,700 |
| 9/9/98 | 126 |
| 9/22/98 | 7,500 |
| 3/31/00 | 690 |
| Total | $14,391 |

---

1. The Opinion constitutes this Court's findings of fact and conclusions of law.

2. PHEAA's records show a balance of $14,088.90 as of January 31, 2002 with a monthly interest accrual of $71.44.

The loans disbursed in 1997 and 1998 entered repayment status on July 25, 1999. The 2000 loan entered repayment status on October 17, 2000. Debtor's total monthly payment obligation on the Student Loans is $160.07. Debtor sought and has been granted various forbearances and deferments.

During the periods that the loans were not in forbearance or deferment, Debtor made seven (7) payments in the total amount of $1,137.10 toward satisfaction of her debt.

Debtor is a 23 year old single female with two sons, ages 2 years and 10 months. Debtor lives in a government-subsidized two-bedroom apartment in Union City, Pennsylvania. Her rent has recently increased from $43 to $96 per month.

Debtor graduated from high school on June 6, 1997 and began attending classes at Erie Business Center in September, 1997 in pursuit of a course of study to become a medical assistant. Debtor attended four semesters at Erie Business Center and began the Winter, 1999 semester before withdrawing on January 25, 1999. Debtor was a good student with good attendance. She completed 63 of the required 78 credits for the program.

At the time of her withdrawal, Debtor held a full-time job at a convenience store which interfered with her studies. Debtor elected to leave school and work full-time.

Debtor returned to the Erie Business Center and took one class in the Winter, 2000 semester after the birth of her first son. Debtor did not finish the program. She had no transportation to get to school, was without money and needed a job to support her son. Debtor was also concerned that she had taken too much time off school and did not remember the training that was needed to perform the required duties in a doctor's office.

Debtor has worked for two years for a fast food restaurant and presently works 22–25 hours per week at a rate of $6.15 per hour. Debtor has not owned a vehicle since hers was repossessed in 1999. Debtor can walk from home to per present place of employment. Debtor has sought other employment in Union City in other stores, shops and manufacturing facilities without success. She is constrained since she owns no vehicle and relies on others for transportation. She has not sought employment outside of the local area as she lacks transportation.

Debtor's prior employment history is limited to experience in convenience stores. Debtor's immediate prior job was as a sales clerk working 30 to 40 hours per week at $5.50 per hour which she left for maternity reasons. Prior to that, Debtor was employed at another convenience store chain for three years where she served as shift manager at $5.50 per hour.

The Debtor does not suffer from any physical or mental conditions that impair employment. One of her children suffers from the residual effects of an auto accident and attends therapy sessions, but is not expected to have any long-term impairment.

At the time of the bankruptcy filing, Debtor's schedules show a total asset value of $1,596, consisting of cash and checking $650; landlord deposit $50; household goods $395; clothing $250; and jewelry $250. Debtor lists unsecured creditors in the amount of $19,367 which consist of credit card debt and the Student Loans.

Debtor's total gross earnings are a maximum of $154 (25 × $6.15) per week or $662 ($154 × 4.33 per month). Debtor is also to receive $55 per week or $238 per month in child support. At the time of trial, Debtor had received no child support in the prior 90 days. The father was

unemployed and an enforcement action was pending in State Court. Debtor receives a rent subsidy; approximately $200 per month in food stamps; plus food for the children from the WIC program; state-paid child care; and medical access cards for the children.

Debtor lives far below the poverty level and absent government assistance, lacks the income necessary to provide the basic necessities of life—of food, shelter and clothing for herself and her children. Debtor has no savings and makes no extravagant expenditures.

### Issue

The issue for determination is whether repayment of Debtor's Student Loans imposes an "undue hardship" that renders the debt dischargeable pursuant to 11 U.S.C. § 523(a)(8).

### Discussion

Section 523(a)(8) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8).

Pursuant to § 523(a)(8), a debtor is entitled to have a student loan obligation discharged only if repayment of the obligation imposes an "undue hardship." To determine whether an undue hardship exception applies, courts in the Third Circuit are bound to apply the three-part test enunciated in *Brunner v. New York Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987) and adopted by the Circuit in *In re Faish*, 72 F.3d 298 (3d Cir.1995), *cert. denied, Faish v. Pennsylvania Higher Education Assistance Agency*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996). *Brunner* set forth exacting standards for a debtor to obtain a discharge of a student loan obligation under the "undue hardship" exception:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner* at 396.

The Debtor has the burden of proving each element of this test by a preponderance of the evidence. *In re Brightful*, 267 F.3d 324, 327 (3d Cir.2001). "If one of the elements of the test is not proven, the inquiry must end there, and the student loans cannot be discharged." *Id.* at 327–28 *citing Faish*, 72 F.3d at 306. "Moreover, this test must be strictly construed: equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis of 'undue hardship.'" *Id.*

Regarding the policy behind the undue hardship exception, the *Faish* Court states:

The *Brunner* standard meets the practical needs of the debtor by not requiring that he or she live in abject poverty

for up to seven years before a student loan may be discharged. On the other hand, the *Brunner* standard safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices.

*Faish* at 305–06.

■■■■ The first prong of the test requires that Debtor show that, based upon current income and expenses, she could not maintain a minimal standard of living if forced to repay her student loans. Debtor cannot do so even before considering the Student Loans. The bare necessities of life are being provided for the Debtor and her dependents through government funded programs in the form of subsidized housing, food stamps, child care, and medical care. Debtor is without substantial assets. There is nothing to liquidate to repay Student Loans or provide additional household income. There is no "fat" to eliminate from the household budget. Debtor clearly satisfies the first prong of *Brunner*.

The second prong of the *Brunner* test requires that additional circumstances exist to show that the Debtor's state of affairs is likely to continue. As stated in *Brightful:*

Under the second element of the test, Brightful must prove that additional circumstances exist indicating that she cannot maintain a minimal standard of living for a significant portion of the repayment period if forced to repay her loans. This is a demanding requirement. As we indicated in *Faish*, it is not enough for Brightful to demonstrate that she is currently in financial straits; rather, she must prove "a total incapaci-

ty . . . in the future to pay [her] debts for reasons not within [her] control." *Id.* at 307 (quoting *In re Brunner*, 46 B.R. 752, 758 (S.D.N.Y.1985)). In other words, "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Brunner*, 46 B.R. at 755 (quoting *In re: Briscoe*, 16 B.R. 128, 131 (Bankr. S.D.N.Y.1981)); *see also In re Ballard*, 60 B.R. 673, 675 (Bankr.W.D.Va.1986) (explaining that "[a] finding of undue hardship is reserved for the exceptional case and requires the presence of unique or extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his obligations").

*Brightful*, 267 F.3d at 328–29.

The *Brunner* Court determined that Brunner failed to establish undue hardship because she was not disabled or elderly and did not have any dependents. When Brunner filed her bankruptcy Petition, only ten months had elapsed since Brunner received her Master's degree in Social Work. Brunner sought a discharge of her student loan debt within a month of the date the first of the loans came due.

The *Brightful* Court likewise determined that Brightful failed to establish undue hardship. Brightful had worked for over a decade in both a full-time and part-time capacity as a legal secretary. She was trained to operate office equipment and computer software. At the time Brightful sought to discharge her student loan obligations, she was working part-time at a rate of $18 per hour. Brightful's income in 1999 was estimated at $8,500, but she had previously had significantly higher earnings. She earned $20,000 in 1998. Brightful received no public assistance. Brightful suffered from emotional and psychiatric infirmities, but the *Bright-*

*ful* Court found that she offered no proof of the severity of her medical condition and failed to show that she would not be able to work full-time as a legal secretary in the future. Brightful had one dependent, a daughter two years from the age of majority.

The present facts are more like those found in the case of *In re Buziou,* Bankr. No. 00–34414SR, Adv. No. 01–0036 (Bankr.ED Pa. Oct. 3, 2001) *aff'd* No. 02–1583, 2002 WL 31513622 (3d Cir. Nov. 8, 2002) (unpublished opinion). The Court of Appeals for the Third Circuit affirmed the Order of the District Court, affirming the Order of the Bankruptcy Court in which the Court determined that Buziou had met all three elements of the *Brunner* test and allowed a discharge of her student loan obligations.

Buziou received student loans to attend a four-month training program in data processing. She received a "certificate" upon completion. She received no degree. Her educational training ended nine years prior to seeking the dischargeability of her student loans. Buziou never succeeded in finding a job that utilized her training and the skills in which Buziou received training had undergone significant changes and rendered her skills obsolete. Buziou's command of the English language was limited. She never held anything but entry level positions paying slightly above minimum wage. Buziou's employment skills were marginal. She was the single parent of a young (7 year old) child.

Debtor here obtained student loans to train for a position as a medical assistant. She was unable to complete the program. The medical field is a fast changing environment. Debtor feels that she lacks the skills necessary to perform as a medical assistant and feels that much of the needed educational training was lost or forgotten due to breaks in her training. Unlike the debtor in *Brightful,* the Debtor has no Master's Degree. In fact, Debtor has no degree and does not even have the "certificate" that Buziou obtained.

Debtor has maintained steady employment. Her experience is limited to fast food and convenience store work. She has never held a position that paid much over minimum wage. She has sought but been unable to obtain alternative employment. Debtor lives far below the poverty level. Even if Debtor were able to obtain a full-time job with her training and experience, and in the unlikely event she received child support payments, she and her children will continue to live below the poverty level. Debtor is a single parent of two very young children, far from the age of majority. Debtor and her children receive a significant amount of public assistance. If Debtor's income increases, the family's public assistance decreases. Considering these circumstances, Debtor's income will never increase in an amount sufficient enough to provide monies for repayment of her Student Loans. Any increased income would simply enable Debtor and her dependents to move toward a "minimal" standard of living.

Debtor is not just experiencing a temporary financial crisis, but has proven a certainty of hopelessness that will last far into the future. Debtor satisfies the second prong of the *Brunner* test.

The third prong of the *Brunner* test requires that the Debtor has made good faith efforts to repay the loans. "[A] debtor seeking to discharge a student loan obligation on the ground that barring him from doing so would result in an undue hardship must prove that he or she made good faith efforts to repay the loan over the entire time period between the date on which the first loan payment became due and the date on which the debtor filed for bankruptcy." *Pelliccia v. United States*

*Dept. of Education,* 67 Fed.Appx. 88 (3d Cir.2003) (unpublished decision). "[A] court inquiring whether a debtor has made a good faith effort to repay a student loan must consider the following factors: (1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities, and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy." *Id.* "In determining whether the Debtor has demonstrated good faith, the inquiry 'is guided by the understanding that undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *In re Buziou* quoting *In re Faish,* 72 F.3d at 305.

Debtor's loans first entered repayment status on July 25, 1999. Debtor kept in contact with lender and obtained forbearances and/or deferments.

Debtor and her dependents have lived in poverty the entire time that the loans have been in repayment status. Debtor is unable to provide even basic necessities. Debtor's belief that her education is not sufficient to enable her to work as a medical assistant and her lack of other job skills, compounded by a lack of transportation, have allowed Debtor to secure only part-time employment at slightly above minimum wage.

Despite these circumstances, Debtor made seven (7) payments on her student loans in the total amount of $1,137.50 during the period the loans were in repayment status. Debtor has made heroic good faith efforts at repayment.

PHEAA points out that it could offer the Debtor various consolidation options with an initial payment of $76.28 per month with increased monthly amounts after the first two years and that Debtor might also be eligible for a consolidation program set up by the United States Department of Education where Debtor could make monthly payments tied to her income and the poverty guidelines. Debtor's present circumstances and her bleak prospects for the foreseeable future preclude the possibility of any payment on her student loans, whether or not they are consolidated.

Debtor's inability to make further payment on her student loans is due to circumstances beyond her control and not due to bad faith or irresponsible expenditures. Debtor satisfies the third prong of the *Brunner* test.

### Conclusion

Establishing entitlement to an undue hardship discharge of student loans is a difficult burden. Debtor has proven all three elements of the *Brunner* test and is entitled to a discharge of her student loan obligations. An appropriate Order was entered on March 17, 2003 and PHEAA's Motion for Reconsideration was appropriately refused by Order dated May 13, 2003.