In re Sheryl Lynn Fuller
NASCIMENTO,
Debtor.

United Student Aid Funds,
Inc., Appellant,

v.

Sheryl Lynn Fuller Nascimento,
Appellee.

BAP No. EC–98–1938–MeRBa.
Bankruptcy No. 97–22098–C–7.
Adversary No. 98–2369.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted July 22, 1999.

Decided Sept. 16, 1999.

---

Philip J. Rhodes, Sacremento, CA, for appellant.

Franklin W. King, Orangevale, CA, for appellee.

Before MEYERS, RUSSELL and BAUM,[1] Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

After a trial, the court entered judgment in favor of the Debtor and determined that the student loan obligation owing to the Appellant was not excepted from the discharge under § 523(a)(8).

We **REVERSE AND REMAND.**

### II

### FACTS

The Debtor is a 40 year old veterinarian. She consolidated several student loans in 1994, which totaled $85,855 by the time of trial. This sum included accrued interest but not collection costs. At the beginning of the trial, the lender irrevocably reduced the balance to $65,000 at 5% interest and then at closing argument further reduced the amount to $55,000 at 5% interest. The repayment period for the consolidation loan was 25 years, until the year 2020. The resulting payment is $362 per month to amortize the reduced loan amount over 20 years or $434 per month if amortized over 15 years.

Since the consolidation loan was funded in early 1995, the Debtor testified that she made two payments—one of "two hundred something" dollars and the other of "four hundred something" dollars.

█ The Debtor's monthly income is $3,798. After taxes and health insurance, her net monthly income is $2,649.[2] The Debtor has been employed at an animal hospital for two years. She testified that she has been out of school for five years and she is an associate veterinarian. She expects to receive insignificant raises in the future, probably just enough to cover the increase in the cost of living. The court found that "the prospects for signifi-

1. Hon. Redfield T. Baum, Sr., Bankruptcy Judge for the District of Arizona, sitting by designation.

2. During the opening statements at the trial, counsel stated that although the Debtor's pay stubs reflected net income of $2,983.24 per month, that it should be reduced to $2649 to reflect the change in income taxes that will occur since her son would no longer be considered her dependent. This modification is not a foregone conclusion. While the Tax Code includes a presumption that the custodial parent is entitled to the benefit of the exemption for tax purposes, there is an exception in the statute if the custodial parent signs a written waiver to release the exemption. 26 U.S.C. § 152(e)(2).

cant changes in that income are negligible. The nature of the veterinary business, as the debtor has testified, is such that that is basically the going rate of pay for veterinarians who are employees in the Sacramento geographic area. And I will note from my own experience in other cases that that is consistent with numbers that I have seen in other cases."

Her monthly expenses, which the court determined to be reasonable, total $2,552, leaving her an excess of $97 per month ($197 if one excludes the payment on another student loan from her expenses). She itemized the following monthly expenses:

| Rent: | $500 | |
|---|---|---|
| Telephone: | $100 | |
| Food: | $250 | |
| Clothing: | $120 | |
| Laundry/Dry Cleaner | $ 80 | |
| Medical & Dental: | $170 | (including weekly visits to the chiropractor) |
| Transportation: | $ 80 | |
| Recreation: | $ 50 | |
| Life Insurance: | $ 15 | |
| Car Insurance: | $139 | |
| Car Payment: | $325 | |
| Student Loan: | $100 | (University of Missouri) |
| Child Support: | $400 | |
| Prof. License | $ 33 | (for the states of Mo., Nv & Ut) |
| Prof. Dues | $ 50 | (California) |
| Continuing Ed. | $ 75 | |
| Hairdresser | $ 65 | |

The child support is for the Debtor's 15 year old son. The Debtor raised him as a single parent for years without receiving or seeking support from her ex-husband. In September 1998, her son moved to Missouri with his father and plans to stay there. The Debtor's ex-husband has no income other than an unidentified amount of state disability payments.

The brief trial took place on December 18, 1998, with the Debtor as the only witness. At the time of trial, the ex-husband had applied for payments through a program for Aid to Families with Dependant Children. The Debtor had been contacted by a representative of the program and informed that they intend to seek child support from her. The Debtor hoped to negotiate a payment of $400 per month with the state of Missouri, but provided

evidence that under California law, she could be required to pay between $540 and $619 per month, depending on the amount of her ex-husband's income. During opening statement, the Debtor's attorney indicated that it may be as much as two years before the court actually sets the amount she will pay for support.

The Debtor testified that her son was an above average student and had planned for some time to go to college. As a result, she believes that her obligation to provide support for her son will not end after three years when he reaches the age of eighteen.

The Debtor admitted that she could repay $20,000 of the student loan, but not the entire amount sought by the creditor. The court concluded that it was left with a choice of discharging all of the obligation or none of it based on the holding of *In re Taylor*, 223 B.R. 747, 753 (9th Cir. BAP 1998). The court concluded that to require the Debtor to repay the entire reduced balance [3] of $55,000 at 5% per annum would constitute an undue hardship under § 523(a)(8). The court acknowledged that the precise amount of support would be determined by a court of competent jurisdiction, but that $400 was certainly a reasonable approximation of what a court would determine to be owed.

The rest of the court's analysis and oral findings are:

And, in assessing the undue hardship issue, taking into account the income that is identified and the prospects of the debtor over the long term and adjustments to expenditures that may be expected over the long term, certainly there will come a point at which child support obligation is no longer accruing; nevertheless, there may still be an unpaid reimbursement obligation that is nondischargeable in any form of bankruptcy that the debtor will still owe and be stuck with the interstate collection procedures on its so-called AFDC reim-

---

**3.** Neither party has discussed the propriety of a creditor's decision to irrevocably reduce the loan balance in an attempt to influence the

requirement of the all or nothing discharge adopted by the Panel in *Taylor*. Therefore, the Panel will not address this potential issue.

bursement obligation based on the assigned debt that I referred to at the outset. So it's not altogether clear that all child support obligations will fall out of the picture to the extent that she is not actually paying $400 per month right now. She may, in the long run, have to pay over a period of eight or ten years to get that paid off. It's conceivable that could happen.

So, with those factors in mind, the question that now is before me is whether $55,000 at five percent per annum is a debt that would constitute—the payment of which would impose an undue hardship for the debtor. In thinking about the analysis, there's very little law that, frankly, is very helpful in how one considers it. I—what I do is: I project in my own mind what the debtor's likely ability will be to make a significant dent in this debt over a period of 10 or 12 years.

I am persuaded by a preponderance of the evidence, and the burden of proof is on the plaintiff and, I believe, the plaintiff's testimony, that this debt is— the repayment of this debt would be an undue hardship, because I am persuaded that she would not be able to pay a substantial portion of the $55,000 during a reasonable period of time.

I appreciate the debtor concedes that she can pay $20,000. Perhaps she could. In my judgment, that's not enough of a dent, in terms of the all-or-nothing analysis I'm required to make, and so the statute has evolved in a way that leads to a result that is, I think, by definition, harsh to all parties. That's the way Congress has elected to do it. It may be the law of unintended consequences, but that's my conclusion and the application in this case.

So the debt is determined to be discharged . . . by the discharge that the debtor received under Section 727 of the Bankruptcy Code.

Appellant contends that the court erred in two significant areas. First, the court improperly determined how long the Debtor's child support obligation would prevent her from making payments on her student loan obligation. Second, the court applied an incorrect standard to decide whether the Debtor's inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period.

## III

### STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under a clearly erroneous standard. *In re Pena*, 155 F.3d 1108, 1110 (9th Cir.1998). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The bankruptcy court's application of the legal standard to decide whether a student loan debt is dischargeable as an undue hardship is reviewed *de novo*. *In re Taylor*, 223 B.R. 747, 750 (9th Cir. BAP 1998).

## IV

### DISCUSSION

The Court of Appeals has adopted the "*Brunner* Test" to determine whether a student loan should be excepted from the bankruptcy discharge as an undue hardship. *In re Pena*, 155 F.3d 1108, 1112 (9th Cir.1998), citing *In re Brunner*, 831 F.2d 395 (2d Cir.1987). The *Brunner* Test has three parts which the court must consider before deciding whether to except a student loan from discharge. The Debtor bears the burden of proving:

1) That she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

2) That additional circumstances exist indicating that this state of affairs is likely

to persist for a significant portion of the repayment period of the student loans; and

3) That the debtor has made good faith efforts to repay the loans. *Pena*, 155 F.3d at 1111.

 The Court of Appeals noted that "neither Congress nor this court has defined the term 'undue hardship' in section 523(a)(8)(B). However, the existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans ..." *Id.* (Citations omitted). The "second prong is intended to effect the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.*

 The Debtor has the burden to satisfy all three of the elements of the *Brunner* Test before a student loan can be discharged. *In re Faish*, 72 F.3d 298, 306 (3d Cir.1995). If the Debtor fails to meet one of the requirements, the bankruptcy court's inquiry must end there, with a finding of no dischargeability. *Id.* The bankruptcy court erred in applying the *Brunner* Test to the facts presented at trial.

 The first prong of the *Brunner* Test requires more than a showing of tight finances. *Faish*, 72 F.3d at 306. In defining undue hardship, courts require more than temporary financial adversity but

typically stop short of utter hopelessness. *In re Hornsby*, 144 F.3d 433, 437 (6th Cir.1998). The proper inquiry is whether it would be "unconscionable" to require the Debtor to take steps to earn more income or reduce her expenses. *Faish*, 72 F.3d at 307.

 The Debtor is employed as full time veterinarian and earns a comfortable annual gross income of $45,576.[4] The Debtor has not reduced her expenses to a minimal amount in an attempt to repay her student loans. The Debtor's budget reflects her current standard of living, which is not a "minimal" standard. Her monthly expenses include amounts such as $65 for the hairdresser, $544 for automobile related expenses, $100 for the telephone, $120 for clothing and $100 for weekly visits to the chiropractor. She also chooses to maintain her professional license in four states, although she only practices in one, so that she need not retake the examination if she decides to move.

Based on the budget presented to the court, the Debtor only needs to adjust her expenses to find an additional $265[5] each month to repay the student loan. The Debtor has significant room in her budget to engage in the "short-term belt-tightening" required of a debtor to make payments on a student loan. For example, the Court of Appeals in *Faish* rejected the claim of undue hardship by a debtor who

**4.** A review of the reports of the U.S. Census Bureau shows that the Debtor's income is in line with the median family income for all households in California, including households with two wage earners. The Debtor earns more than twice the $20,000 annual median income for women heading households. *See*, U.S. Bureau of the Census, Current Population Reports, P60–200, *Money Income in the United States: 1997*, U.S. Government Printing Office, Washington, D.C. 1998.

Furthermore, the Debtor's income far exceeds the amount established in the Poverty Guidelines of the Department of Health and Human Services. The Poverty Guideline in

1998 for a family of one was $8,050 and for two was $10,850. Annual Update of HHS Poverty Guidelines, 63 Fed.Reg. 9236 (1998). These amounts increased in 1999 to $8,250 and $11,060, respectively. Annual Update of HHS Poverty Guidelines, 64 Fed.Reg. 13428 (1999). While we do not hold that a person must fall below the Poverty Guidelines to discharge a student loan, we note that the Debtor's income is four times the amount required to obtain assistance from various federal programs. *See*, *Hornsby*, 144 F.3d at 436.

**5.** The monthly payment required to amortize the reduced loan balance over 20 years is $362, less the $97 excess income in the Debtor's current budget equals $265 per month.

wanted to buy a car rather than continue to take the bus and to move to an apartment in a better neighborhood for the benefit of her eleven-year old son. If the Debtor just reduces her current automobile related expenses by half, she will be able to repay her student loan without any further adjustments to her budget.

In addition, the Debtor's responsibility to pay child support will end within the next three to six years, while the student loan is to be repaid over the next twenty years. Once the $400 for support is removed from the budget, she clearly has adequate resources to repay the student loan. The fact that her son wants to go to college and she would like to help him pay for it also does not create an "undue hardship" to prevent her from repaying her own student loans.

The bankruptcy court concluded it was conceivable that since the Debtor was not yet actually paying $400 per month, interest could accrue so that she may have to pay the support obligation over a period of eight or ten years. While this scenario could be "conceivable", it was not supported by any evidence. In addition, the Debtor could avoid this result. Since she is not paying the $400 on behalf of her son, but has the ability within her budget to do so, she should either be paying it towards the student loan, or putting it into an account which accrues interest so that she is *not* faced with repaying the support obligation for eight or ten years.

Thus, the Debtor failed to satisfy the first requirement of *Brunner* to show that she cannot maintain a minimal standard of living for herself and her dependents if forced to repay the loan. Furthermore, the Debtor has no "additional circumstances" to support the discharge of her student loans.

In *Pena*, the Court of Appeals viewed the fact that Mr. Pena's earning potential was not increased by his education, coupled with his wife's disability, as the additional circumstances present to meet the second prong of the three part *Brunner*

Test. There are no similar factors in this case. The Debtor is healthy and making full use of her education as a licensed and practicing veterinarian. The bankruptcy court did not address the Debtor's good faith efforts in repaying the loan—the third element set forth in *Pena*. Since the Debtor failed the first two *Brunner* elements, the Panel need not even reach the third prong.

It is the Debtor's duty to adjust her lifestyle to allow her to make the payments on her student loan. She failed to show that she is living at a minimal standard or that she is unable to repay the loan.

V

## CONCLUSION

The bankruptcy court's finding that the Debtor's obligation to pay child support could last for eight to ten years was clearly erroneous. The court did not correctly apply the facts presented to the standards adopted by the court of appeals in *Pena* to find an undue hardship. The Debtor's income and expenses allow her to maintain her present standard of living, pay support until her son reaches majority and repay the reduced amount of her student loan within the twenty-one year repayment period anticipated by the loan documents.

**REVERSED and REMANDED** with instructions to enter judgment for the Appellant in the reduced amount of the loan.