In re Anthony Leo **FURNERI** and Jeanine Leah Salustri, Debtors.

Anthony Leo Furneri and Jeanine Leah Salustri, Plaintiffs,

v.

Graduate Loan Center; the Education Resources Institute; Pennsylvania Higher Education Assistance Agency; Zwicker and Associates; Sallie Mae Servicing Corporation, Defendants.

Bankruptcy No. J00–00673–DMD.
Bancap No. 00–1041.
Adversary No. J00–00673–001–DMD.

United States Bankruptcy Court, D. Alaska.

June 20, 2001.

Anthony Leo Furneri, Juneau, AK, pro se.

Jeanine Leah Salustri, Juneau, AK, pro se.

## MEMORANDUM DECISION

DONALD MacDONALD, IV, Bankruptcy Judge.

Anthony Furneri and his spouse, Jeanine Salustri, seek to discharge their student loans as an undue hardship under 11 U.S.C. § 523(a)(8). Their complaint is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Jurisdiction arises in accordance with 28 U.S.C. § 1334 and the district court's order of reference. I find their loans to be non-dischargeable.

*Background*

The plaintiffs are a married couple with one child. Anthony Furneri is 32 years old and Jeanine Salustri is 34. Their son, Noah, is two and one-half. They have resided in Juneau for the past school year where Anthony has worked as a special education teacher. Jeanine is a full-time mother, although she has worked occasionally as an undercover shopper, evaluating services at local businesses. Both are

highly educated. Anthony has a B.A. in political science, a juris doctorate and a master's degree in special education. Jeanine has a B.A. in biology and a juris doctorate. They and their son enjoy good health.

Both Anthony and Jeanine have accumulated substantial debts for student loans, most of which were incurred while they attended law school. Anthony owes approximately $125,800.00 to defendants TERI, ECMC, and PHEAA for guaranteed student loans. Jeanine owes approximately $105,200.00 to the same lenders. Their combined student loan obligation exceeds $230,000.00.

The debtors had $6,000.00 in cash on hand when they filed for chapter 7 relief on July 12, 2001. Jeanine had approximately $9,700.00 in a retirement account. They have no other hard assets of any substance. Anthony worked as a special education teacher this past year for the Juneau School District. He earned $38,508.00 for the 2000–2001 school year. At trial, he announced he was leaving public employment to work in a private Christian school for an annual salary of $21,000.00 a year. He had signed a contract to work at the private school and said he would not consider taking a contract with the Juneau School District even if it were offered. Jeanine has no plans to work outside the home, other than the part-time contract work she now has, which yields about $100.00 a month. The couple plan to spend the summer working as missionaries in Christian summer camps for children. They will receive room, board and $250.00 per month for their services.

*Analysis*

■ Student loans made under programs funded by a governmental unit or nonprofit institution are not subject to discharge unless the debtors can establish that their repayment would be an undue hardship on the debtor or the debtor's dependents.[1] In this proceeding, all of the defendants are nonprofit institutions or governmental units and undue hardship must be established before the student loans can be discharged. The student loan recipient has the burden of proof on the issue of undue hardship.[2] The Ninth Circuit and the District of Alaska have adopted the three part test of *Brunner v. New York State Higher Educ. Services Corp.*[3] to determine whether undue hardship exists.[4] Under *Brunner*, the debtor must prove:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[5]

Under the *Brunner* test, the first issue to be determined is whether the debtors can maintain a minimal lifestyle and still repay their loans. I find that, given their

---

1.  11 U.S.C. § 523(a)(8).

2.  *Alaska Comm'n on Post–Secondary Educ. v. Jester (In re Jester)*, 1 A.B.R. 503, 505 (D.Alaska 1991), citing *Childs v. Higher Educ. Assistance Fund, (Matter of Childs)*, 89 B.R. 819 (Bankr.D.Neb.1988).

3.  831 F.2d 395 (2nd Cir.1987).

4.  *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1111–1112 (9th Cir. 1998); *United Student Aid Funds v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. BAP 1999); *Jester*, 1 A.B.R. at 506.

5.  *Brunner*, 831 F.2d at 396.

current income, the debtors cannot maintain a minimal standard of living and still repay their loans. Anthony received net income of about $2,436.00 per month while working for the Juneau School District. The debtors would need to commit virtually all of their current income to make payments on their student loans.[6] They live conservatively, but do pay a monthly tithe of $350.00 to two separate churches.

The second prong of the *Brunner* test requires that the debtors prove that their financial problems are likely to persist during a significant portion of the repayment period of their student loans. Here, the debtors have stated that they will not pursue more lucrative careers. Anthony wants to teach in a Christian school. Jeanine wants to stay at home and raise more children. Their financial problems will persist because of their career and lifestyle choices. Both debtors could, in fact, earn much more than they do now. I do not believe, given the current expenses of raising and educating children, that either of the debtors would deprive their children of future needs, including an education. They are dedicated parents who will do what is needed to provide for their children. Each of them has the ability to increase their income substantially at any time. They are both in their thirties and in good health. Anthony could continue working as a special education teacher. He could also pursue work in the legal field as a paralegal, law clerk or attorney. As a teacher, his income next year would climb to $39,272.00 and could increase to as much as $50,000.00 annually in seven years. Jeanine has prior experience as a lab technician and a lab supervisor. She could do this type of work again. She also could enter the legal field as a paralegal,

law clerk or attorney, where her annual income could easily start in the $40,000.00 range and climb to over $100,000.00 in five to seven years time.

■ Both debtors have the skills and physical capabilities for pursuing more lucrative careers. Their financial situation is a product of choice rather than ill health or some other circumstance beyond their control. They hold the key to their own financial well-being. Because of this, I find that they have failed to prove that their financial problems are likely to persist during a significant portion of the repayment period.

The final issue to determine under the *Brunner* test is whether the debtors have made good faith efforts to repay their loans. Here, the debtors have deliberately chosen not to utilize their educations to maximize their incomes and repay their loans. Neither one has taken a bar examination in any state or attempted to obtain legal employment of any kind since graduation from law school. Jeanine earned $55,000.00 annually as a lab supervisor prior to entering law school. She has not worked in that capacity since attending law school. She graduated *magna cum laude* from Gonzaga Law School and was sixth in her class of two hundred. Given these credentials, a lucrative legal career appears to be within her reach. Anthony has chosen to leave his most productive employment, as a special education teacher, to teach for $17,500.00 less per year at a private Christian school. When the debtors filed for bankruptcy, they had $9,000.00 available in a pension plan and exempt funds of $6,000.00 which were not applied to any of their loans. They have obtained a series of deferments to avoid

**6.** Amortizing the $230,000.00 total student loan debt over a 20 year term, at a composite rate of 8½%, the debtors would be required to make monthly payments of about $2,000.00. With a 10 year amortization at the same rate, the monthly payments would be $2,851.93.

payments on their loans while accruing a substantial amount of cash prior to their bankruptcy.[7]

Good faith also requires the examination of a variety of factors, including "the debtor's efforts to obtain and retain employment; the debtor's present employment status; the debtor's employment record; whether the debtor's education and skills are being used to the best advantage; and whether the debtor and his or her dependents are living within their means."[8] Applying these factors here, I find that, while the debtors and their son live within their means, they have not attempted to use their education and skills to their best advantage. Janine wants to be a stay at home mom, despite her considerable academic achievements. Anthony has opted to teach in Christian schools even when he could earn substantially more in public schools or in some form of legal work. Their present choice of work, as counselors at a Christian summer camp, does not maximize the use of their considerable skills. Under these circumstances, the debtors do not meet the good faith requirements of *Brunner*.

*Conclusion*

Furneri and Salustri have not established that repayment of their student loans would constitute an undue hardship under 11 U.S.C. § 523(a)(8). Their economic wounds are self-inflicted. They have the ability, if they choose, to repay their loans. An appropriate order and judgment will be entered dismissing their

complaint with prejudice, each party to pay its own fees and costs.

7. Before entering law school, Janine made 60 payments on her undergraduate student loans. After she graduated from law school, Janine made 13 more payments on her loans. She has obtained 9 repayment deferments on the loans between the time she graduated from law school and the time she filed bankruptcy. Anthony has only made two payments on his student loan debts between 1996 and the time the bankruptcy petition was filed. He has obtained 10 repayment deferments.

8. 3 NORTON BANKR. L. & PRAC.2d, § 47–52 at p. 47–143 (West 1997) (citations omitted).