**In re Scott T. FULLER, Debtor.**

**Scott T. Fuller, Plaintiff,**

v.

**U.S. Department of Education, et al., Defendants.**

**Bankruptcy No. 02–40312 TT.**
**Adversary No. 02–4805 AT.**

United States Bankruptcy Court, N.D. California.

March 13, 2003.

Jay Chafetz, Law Office of Jay Chafetz, Walnut Creek, CA.

Stephen L. Johnson, Assistant United States Attorney, San Francisco, CA.

Miriam Hiser, Law Offices of Miriam Hiser, San Francisco, CA.

## MEMORANDUM OF DECISION RE DISCHARGEABILITY OF STUDENT LOANS

LESLIE J. TCHAIKOVSKY,
Bankruptcy Judge.

The above-captioned adversary proceeding was tried to the Court on February 25, 2003. Plaintiff Scott T. Fuller (the "Debtor") is the debtor in the above-captioned chapter 7 case. The defendants U.S. Department of Education ("DOE") and The Education Resources Institute ("TERI") are the obligees of the Debtor's student loans. In this adversary proceeding, the Debtor seeks to discharge his student loans in their entirety on the ground that excepting them from his discharge would impose an undue hardship. See 11 U.S.C. § 523(a)(8). Having heard the evidence presented and the argument made, the Court concludes that judgment should be entered for defendants. The reasons for the Court's decision are set forth below.

### SUMMARY OF FACTS

The Debtor was born in 1967. Thus, as of the date of the trial, he was only 35 or 36. After graduating from high school, the Debtor attended a community college, intending ultimately to go to medical school. He received a two year college degree. Thereafter, he attended chiropractic school where he received a degree in 1998.

According to the Debtor, to be licensed as a chiropractor, one must pass a four part national exam and a state exam. The state exam cannot be taken until the applicant has passed all four parts of the national exam. The Debtor passed the first three national examinations. However, he did not pass the fourth part on his first try. He was unable to figure out how to support himself while studying for and taking it again. Since he was no longer in school, he could not borrow any more money under the student loan programs, and he had no more available credit on his credit cards. Moreover, according to the Debtor, by this time, he had lost interest in becoming a chiropractor.

Instead, the Debtor took a real estate course at a local junior college. Through a referral from his teacher, he obtained a job as a real estate broker at Norwest Mortgage. Since then, the Debtor has held a series of jobs of this nature with various companies. The Debtor's compensation in all of these positions has been a low guaranteed salary with the possible upside of commissions based on transactions attracted and closed. Unfortunately, he has not been terribly successful to date in attracting and closing loans.

The Debtor is physically and psychologically healthy. He has no dependents. To the contrary, he lives with his girlfriend in a house that she owns. He pays $900 per month in rent and shares the cost of the utilities when he has enough money to do so.

The Debtor has five separate loans held by TERI. Two of these have 20 year terms; three have ten year terms. The terms on these loans started to run on various dates from 1999 to 2001. His total debt to TERI is approximately $50,000. The interest rates range from 4.11 percent to 6.25 percent per year. In or about 2000, the Debtor paid $2,000 to $3,000 on these loans to prevent a lawsuit being filed against him.

The Debtor's debt to the DOE is based on a consolidation of student loans in 1999. The total debt to the DOE, as of the date of trial, was approximately $190,000. The interest rate on the principal balance of this loan is 4.06 percent per year. The term of the loan depends on the repayment program the Debtor chooses. To date, the Debtor has not selected a program. However, if he did, he would most likely select the Income Contingent Program which has a term of 25 years. Under this program, he will not be required to make any payment if he cannot afford to do so.

The Debtor also incurred substantial credit card debt over the years. After his student loans came due and before filing his bankruptcy petition, on the advice of a credit counselor, the Debtor made payments on his credit card debt rather than paying his student loans because the interest rates on the credit card debt were higher than on the student loans.

## DISCUSSION

■ The leading case in the Ninth Circuit on the dischargeability of student loan obligations is *In re Pena*, 155 F.3d 1108 (9th Cir.1998). *Pena* adopts a three prong test for dischargeability of student loans first set forth in *In re Brunner*, 831 F.2d 395, 396 (2nd Cir.1987). See *Pena*, 155 F.3d at 1112. Under this test, to discharge student loans, the Debtor must establish each of the following elements: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living...if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. The Debtor has the burden of proof on each of these elements. *In re Faish*, 72 F.3d 298, 306 (3rd Cir.1995); *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999).

■ A court is not required to determine whether to discharge student loan debt on an all-or-nothing basis. If the Court determines that a debtor has satisfied the second and third prong of the *Brunner* test and could repay a *portion* of his or her student loans while still maintaining a minimal standard of living, the Court may grant the debtor a *partial* discharge. See *In re Myrvang*, 232 F.3d 1116, 1122 (9th Cir.2000)—holding that bankruptcy court may grant partial discharge under § 523(a)(15) and rejecting the Bankruptcy Appellate Panel's contrary conclusion under § 523(a)(8) in *In re Taylor*, 223 B.R. 747 (9th Cir. BAP 1998).

■ Applying these principles to the facts of this case, the Court concludes that the Debtor would be entitled to a partial discharge based on his current financial condition. However, the Debtor has failed to satisfy the second and third prongs of the *Brunner* test. Thus, judgment must be entered in favor of the defendants.

## A. ABILITY TO MAINTAIN "MINIMAL" STANDARD OF LIVING AND REPAY LOANS

■ As recited above, the first prong of the *Brunner* test is that the debtor cannot maintain a "minimal" standard of living if forced to repay his student loans. *Brunner*, 831 F.2d at 396. To satisfy this prong requires a showing of more than "tight finances." *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir.2001). The required standard falls somewhere between "temporary financial adversity" and "utter hopelessness." *Id.*, quoting from *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999).

The Debtor contends that he is unable to maintain a "minimal" standard of living and repay any portion of his student loans. When the Debtor filed his bankruptcy petition, as required by the bankruptcy rules, he filed a budget showing his income and expenses (the "Budget"). He listed $3,000 per month as his income and $5,215 as his expenses. However, $3,000 of his expenses represented payments on his student loans. If the student loan payments are deducted from his expenses, the Debtor has disposable income of $785 per month.

The Debtor testified that some of his expenses had increased since he filed the Budget. However, the Court did not find the Debtor's testimony persuasive. The increased expenses did not appear essential and thus were not in keeping with the stringent standard established by the statutory and case law. Therefore, the Court concludes that the Debtor could pay $785 per month on his student loans and still maintain a minimal standard of living.[1]

As recited above, the balance due on the student loans is presently approximately $240,000. Moreover, if the loans are not discharged, interest will continue to accrue on the principal balances of the loans, thereby increasing the Debtor's student loan debt. Clearly, the Debtor could not pay these loans in full within their terms by paying $785 per month. If the Debtor had satisfied the other two prongs of the *Brunner* test, the Court would grant the Debtor a partial discharge, leaving undischarged only $100,000 of the student loans, spread among the various loans on a pro rata basis. However, as explained below, the Court concludes that the Debtor has not satisfied the second of the two *Brunner* prongs.

## B. LIKELIHOOD THAT STATE OF AFFAIRS WILL PERSIST FOR SIGNIFICANT PORTION OF RE-PAYMENT PERIOD

■ The second prong of the *Brunner* test is that "additional circumstances" exist that make it likely that the debtor's current situation will persist for a significant portion of the repayment period. This prong has been interpreted as requiring evidence of some type of barrier to the debtor's improving his current financial circumstances. Examples of such barriers are "psychiatric problems, lack of usable job skills and severely limited education." *In re Birrane*, 287 B.R. 490, 497 (9th Cir. BAP 2002).

The Debtor failed to meet his burden of proof on this issue. The Debtor has worked for a series of employers in the real estate mortgage field over the past four years. He has not yet experienced any great success. However, the Debtor is young, personable, and reasonably intelligent. The Court cannot concludes that he will never earn more than he does at present.[2]

---

1. Arguably, at least one of the Debtor's expenses had decreased. The Debtor's list of expenses included $900 for rent. The Debtor testified that he had the use of two bedrooms and that he allocated $450 of his rent to the use of the bedroom as an office. At trial, the Court stated that it did not consider essential the use of the second bedroom as an office based on the Debtor's current employment. On further reflection, the Court concludes otherwise. The Debtor's allocation of $450 of the $900 rent to the use of the second bedroom as an office seems artificial, and $900 for rent in the San Francisco Bay Area seems sufficiently low to qualify as minimal.

2. In *Birrane*, the Bankruptcy Appellate Panel reversed the bankruptcy court's determination that the debtor's student loans should be discharged. The Panel concluded that the debtor had failed to satisfy either the second or third prong of the *Brunner* test. The debtor was 36 years old with no dependents and no physical disabilities. She had a Master of

At trial, it was noted that the Debtor could have earned more if he had simply accepted a straight, salaried job. Instead, he persisted in taking jobs with low guaranteed wages but with a possible upside of commissions. Unfortunately, to date, he has not consistently succeeded in earning substantial commissions.

However, the Court was not persuaded that this situation was likely to continue for the next ten to fifteen years. It is just as likely either that the Debtor will have greater success in earning commissions in the future or that he will conclude that his better course is to take a job with a higher guaranteed salary even though it does not offer the possibility of large commissions. The Debtor's counsel attempted to overcome the Debtor's failure to present evidence to satisfy this prong by contending that the Debtor's track record to date established that he was destined to failure. The Court found the closing argument eloquent but unpersuasive.

The Debtor's relative lack of success in earning commissions to date does not persuade the Court that his financial circumstances will not improve in the future. With more experience and additional contacts, developed over a few more years, the Debtor is virtually certain to have more success. If not, the Court believes, he will seek and find a more lucrative job. He has already demonstrated the ability to give up on one career plan when it does not prove feasible.

In seeking to discharge his student loan debts, the Debtor relied heavily on *In re Peel*, 240 B.R. 387 (Bankr.N.D.Cal.1999), a case with many factual similarities. In *Peel*, the debtor was 33 years old, healthy, and had no dependents. He also held a chiropractic degree and, unlike the Debtor, had been employed in his field for a time. However, by the time of trial, he had been unable to find such work for a number of years. Instead, he was working as a technical support representative for a medical software company, earning approximately $25,000 per year in adjusted gross income. His expenses were approximately $1,958 per month or $23,496 per year. 240 B.R. at 389–393.

The *Peel* court found that the debtor's chiropractic degree did not assist him in earning a living. To improve his circumstances in the computer industry, he would be required to obtain additional education or training. However, he could not afford to obtain such education or training given his student loan and other debts. Therefore, the Court concluded that the debtor's financial circumstances were not likely to improve during the remaining term of the loan.

The *Peel* decision may be distinguished in certain factual respects. However, more important, the *Peel* decision is based on the judge's evaluation of a particular debtor after observing that debtor in court. Based solely on the facts recited in the decision, the Court does not believe it would have reached the same decision as

---

Fine Arts degree with an emphasis on dance choreography and performance. At the time of trial, she was employed as an independent contractor, teaching creative and modern dance to children. She had also started her own dance company four years earlier, to which she devoted approximately half her time but which had not yet generated sufficient revenues to pay her a salary. 287 B.R. at 493. At the time of trial, her income and expenses were approximately equal. 287

B.R. at 495. The Panel reversed the trial court's decision, discharging the debtor's student loans, on the ground that, among other things, the debtor had failed to establish that her financial condition was unlikely to improve. The Panel stated as follows: "Given her hard work, talent, and exposure to the public, it appears that...[the debtor's] prospects at future employment within her chosen field are quite good." 287 B.R. at 498. The same may be said of the Debtor.

the *Peel* judge. However, the Court did not have the benefit of that judge's observation of the debtor.

## C. DEBTOR'S GOOD FAITH EFFORTS TO REPAY LOAN

 The third prong of the *Brunner* test is that the Debtor must have made a good faith effort to repay the student loans. A debtor may satisfy this standard even though he has made no payments on the student loans if he establishes that, due to forces beyond his reasonable control, he never had the ability to make any payments and still maintain a minimal standard of living. *In re Peel,* 240 B.R. at 395. The Court concludes that the Debtor has not satisfied this prong either. As recited above, the Debtor made no payments whatsoever on the DOE loans. He made payments on the TERI loans only when forced to by the threat of a lawsuit.

The Debtor clearly had the ability to make some payments on the student loans during the last five years. On the advice of a financial counselor, the Debtor paid credit card bills rather than paying on the student loans. The rationale was that he should pay those debts first that accrued interest at the highest rate. This strategy makes perfect sense if one ultimately pays off all one's debts. However, in a bankruptcy context, the Court simply cannot conclude that paying *non-student loan debt* while *not* paying *student loan debt* constitutes a good faith effort to repay *student loan debt.* The Court acknowledges that, in *Pena,* the Ninth Circuit affirmed the lower court's finding of good faith despite the debtors having used $8,000 in back disability benefits to buy a car and pay bills other than their student loans. However, in *Pena,* the debtors' other bills were four times those of the student loans. See *Pena,* 155 F.3d at 1114. In this case, according to the bankruptcy schedules, the Debtor's credit card debt is only half his student loan debt.

## CONCLUSION

Judgment will be entered in favor of the defendants. Based on the first prong of *Brunner* only, the Debtor would be entitled to a partial discharge. The Court would discharge all but $100,000 of the Debtor's student loans based on his present income if it were persuaded that the Debtor's financial condition were likely to persist for a significant portion of the remaining terms of the loans and that the Debtor had made a good faith effort to repay the student loans. However, the Debtor failed in establishing each of these two prongs.

This judgment is without prejudice to a future determination to the contrary. At some time in the future, based on changed circumstances, the Debtor may be able to satisfy these two prongs. Counsel for the defendants are directed to prepare a proposed form of judgment in accordance with this decision and to submit it to the Court.