**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.  HI-12-1055-JuHPa |
| STACY MARIE JORGENSEN, | Bk.  No.  10-03328 |
| | Adv. No.  11-90016 |
| Debtor. | |
| _____ | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Appellant, | |
| v. | **OPINION** |
| STACY MARIE JORGENSEN, | |
| | |
| Appellee. | |
| _____ | |

Argued and Submitted on July 19, 2012
at Pasadena, California

Filed - September 11, 2012

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Robert J. Faris, Bankruptcy Judge, Presiding

_____

Appearances:    Adam C. Trampe, Esq. argued for Appellant
Educational Credit Management Corporation;
Stacy Marie Jorgensen argued pro se.

_____

Before:  JURY, HOLLOWELL, and PAPPAS Bankruptcy Judges.

JURY, Bankruptcy Judge:

Debtor Stacy Marie Jorgensen ("Jorgensen") sought to discharge student loan debt owed to Educational Credit Management Corporation ("ECMC") as an undue hardship under § 523(a)(8).[1] The bankruptcy court granted a partial discharge of the debt. ECMC appeals, contending that the bankruptcy court erred in finding that Jorgensen met all three prongs of the undue hardship test set forth in Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner), 46 B.R. 752 (Bankr. S.D.N.Y. 1985) aff'd, 831 F.2d 395 (2d Cir. 1987). We AFFIRM.

## I. FACTS

Jorgensen is forty-four years old with no dependents. She earned a bachelor of science degree in wildlife biology from the University of Montana in 1992, a master of science degree in botany from the University of Georgia in 1996, and a Ph.D. in geography from the University of Georgia in 2002.

Jorgensen financed her graduate education partly with student loans. She made timely payments on her loans from January 2002, when payments first became due, until June 2010. She obtained a forbearance beginning in July 2010. She has made no payments since the forbearance period ended. The loan is currently payable at $270.07 per month. As of November 17, 2011, she owed ECMC $36,284.81 plus interest at six percent per

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

-2-

annum.

From January 2002 until June 2004, Jorgensen worked as a visiting assistant professor of geography at Ohio University. From August 2004 to the present, she has worked as an assistant professor of geography at the University of Hawai'i at Manoa. She applied for jobs with the federal government, but was unsuccessful.

In early 2010, a blood test revealed that Jorgensen suffered from stage IIB pancreatic adenocarcinoma. Initial blood tests in Hawaii failed to correctly identify the cancer. Jorgensen elected to seek treatment at the M.D. Anderson Cancer Center in Houston, Texas ("MDACC"). MDACC has substantially more experience and expertise with pancreatic cancer than any facility in Hawaii.

After undergoing chemotherapy and radiation treatments to reduce the size of the tumor, Jorgensen underwent a pylorus-preserving pancreaticoduodenectomy. Surgeons removed the head of her pancreas, her gall bladder, a section of her duodenum, and thirty-five lymph nodes. She returned to Hawaii and underwent further chemotherapy from July to October 2010. She receives quarterly checkups at MDACC to look for cancer recurrence.

Reports from Jorgensen's doctors show that she "is doing quite well" and that she "[is] free of disease after completing an additional four cycles of chemotherapy." Jorgensen does not challenge her doctor's reports.

In the wake of her cancer, however, Jorgensen suffers from several other ailments that affect her ability to work. For

-3-

example, she testified that she suffers from pancreatic enzyme insufficiency, high blood pressure, and anemia. As a symptom of her anemia, she experiences serious fatigue. The fatigue forced a reduction in her workload by twenty-five percent for the 2010-2011 academic year. In the 2011-2012 academic year, Jorgensen resumed a full workload, but she became so fatigued that another professor took over her teaching duties for one of her two classes in the middle of the fall semester. Jorgensen asserts that maintaining a full-time workload would not be possible because her anemia treatments over the past two years have been unsuccessful.

Jorgensen filed her chapter 7 bankruptcy petition pro se on October 29, 2010. On February 4, 2011, Jorgensen filed a complaint to discharge her student loan debt under § 523(a)(8). She alleged that the student loans imposed an undue hardship on her.

In her petition, Jorgensen listed $2,804 in net monthly income. At the January 10, 2012 trial, Jorgensen revised her schedules. Jorgensen's net monthly income increased to $3,750 for the academic year 2011-2012. Jorgensen testified that her income increased because she returned to full-time work after her cancer treatment. Jorgensen's petition listed $2,920 in monthly expenses. Jorgensen's revised monthly expenses were $4,092 as of January 2012. Jorgensen testified that she revised her expenses because she neglected to include several expenses when she drafted her original schedules.

Jorgensen pays $1,450 per month for rent. Jorgensen testified that she had not searched for cheaper housing because

-4-

she moved into her current apartment weeks before being diagnosed with cancer. She also testified that she will be giving up her apartment in January 2012 because she will be teaching in Paris for the spring semester. Jorgensen admitted that she will not pay rent while she is in Paris as an apartment will be provided for her. Jorgensen plans on putting her rental savings towards her car payments.

Jorgensen testified that she spends an average of $800 per month for medical expenses. Because of her cancer, she must complete quarterly check-ups for three to five years.[2] After three to five years, she can reduce her checkups at MDACC from quarterly to annual.

In addition to her monthly medical expenses, Jorgensen incurred a one-time expense in summer 2011 of $4,699 for orthodontic treatment. She testified that the orthodontic treatment was necessary to resolve a problem with her bite, which was deteriorating. Jorgensen's insurance company determined that the treatment was not cosmetic and contributed $1,000 to pay for the treatment. She admitted to paying for her orthodontic care with a summer salary grant. She testified that she used the remaining portion of her summer grant to pay her monthly expenses; until that time her parents helped her make up for her monthly deficit.

In late 2011, Jorgensen purchased a new 2011 Mazda 2

---

[2] Jorgensen asserted that returning to MDACC for follow-up care was essential because the facility had pertinent knowledge of her medical history and has an expertise in treating her type of cancer.

subcompact. Jorgensen testified that her previous vehicle, a 2001 Honda CRV with 90,000 miles, was in a state of disrepair. In 2009, Jorgensen spent $3,000 in repairs on her Honda CRV. She testified that she was facing thousands of dollars in additional repairs to fix the vehicle's alignment, air conditioning, and electronic windows. In light of these repairs, Jorgensen made the decision to purchase a new car. Jorgensen financed the vehicle at a rate of $362.73 per month over five years. Jorgensen bought the car in Texas where it was substantially cheaper and left it there with her sister until she returned from Paris.

Jorgensen spends $625 per month for food. Jorgensen originally listed $500 per month for food in her petition. Jorgensen testified that her revised food expenses were higher because before her petition was filed, she spent twenty-two weeks in Texas where food is cheaper. Jorgensen spends $150 per month for clothing. Jorgensen testified that her clothing expenses increased by $50 per month because she lost a substantial amount of weight as a result of her cancer treatment.

At the January 10, 2012 trial, Jorgensen admitted that ECMC offered her a payment plan ("Graduate Repayment Option") to reduce her monthly student loan payment. Under the Graduate Repayment Option, Jorgensen would make payments of $180 per month for 25 years. Jorgensen testified that she rejected the Graduate Payment Option because she did not have any surplus funds available. She also testified that the Graduate Payment Option was not acceptable because it was based on her income,

not her expenses.

The bankruptcy court issued a memorandum decision applying the three-prong test established in Brunner, which was adopted by the Ninth Circuit in United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998), to determine undue hardship under § 523(a)(8).

The bankruptcy court found that Jorgensen met all of the elements of the Brunner test. The bankruptcy court determined that Jorgensen's monthly income is $350 less than the monthly expenses she must pay to maintain a minimal standard of living. The bankruptcy court also found that Jorgensen's financial woes are likely to persist for the rest of her life. Finally, the bankruptcy court found that despite her decision to receive orthodontic treatment, which may not have been medically essential, in the totality of circumstances she acted in good faith to repay her student loan debt.

Nevertheless, the bankruptcy court refused to discharge all of Jorgensen's student loan debt. The bankruptcy court determined that Jorgensen's rent savings accruing from her semester in Paris were not necessary to maintain a minimal standard of living. The bankruptcy court also found that Jorgensen did not satisfactorily explain her purchase of a vehicle before going to Paris rather than after she returned. On January 19, 2012, the bankruptcy court entered a judgment in which it refused to discharge $8,045.02 of Jorgensen's student loan debt. ECMC filed a timely appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

-7-

§§ 1334 and 157(b)(1). This Panel has jurisdiction under 28 U.S.C. § 158.

### III. ISSUE

Whether the bankruptcy court erred in granting Jorgensen a partial discharge of her student loan debt.

### IV. STANDARD OF REVIEW

We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable. Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087 (9th Cir. 2001).

We review the bankruptcy court's exercise of its equitable powers under § 105(a) for abuse of discretion. Missoula Fed. Credit Union v. Reinerston (In re Reinerston), 241 B.R. 451, 454 (9th Cir. BAP 1999). We apply a two-part test to determine whether a bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we review de novo whether the bankruptcy court identified the correct legal rule to apply the relief requested. Second, we determine whether the trial court's application of the correct legal rule was illogical, implausible, or without support in the record. Id. at 1262.

We review the bankruptcy court's factual findings for clear error. Educ. Credit Mgmt. Corp. v. Mason (In re Mason), 464 F.3d 878, 881 (9th Cir. 2006) (quoting Miller v. Cardinale (In re DeVille), 361 F.3d 539, 547 (9th Cir 2004)).

### V. DISCUSSION

Under § 523(a)(8), student loan debt is presumed nondischargeable unless the debtor establishes that repayment

-8-

would impose an undue hardship. The Bankruptcy Code does not define undue hardship. Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 944 (9th Cir. 2006). We apply the three part test established in Brunner to determine if repayment would impose an undue hardship. See In re Pena, 155 F.3d at 1112 (adopting the "Brunner test" from In re Brunner, 46 B.R. at 753). Under the Brunner test, the debtor must prove that: (1) she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if required to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) the debtor has made good faith efforts to repay the loans. Id. at 1111. The debtor bears the burden of proof on all three elements. In re Rifino, 245 F.3d at 1087-88.

## A. Partial Discharge

Bankruptcy courts may exercise their equitable authority under § 105(a) to partially discharge student loans. Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1173 (9th Cir. 2003). The bankruptcy court has discretion in determining the amount and terms of payment of a partial discharge. Bossardet v. Educ. Credit Mgmt. Corp. (In re Bossardet), 336 B.R. 451, 457 (Bankr. D. Ariz. 2005).

However, a bankruptcy court's discretion to grant a partial discharge is not unlimited. In each case, the bankruptcy court must find that all three prongs of the Brunner test were satisfied as to the portion of debt discharged. In re Saxman, 325 F.3d at 1174. Bankruptcy courts have struggled to fashion a

-9-

partial discharge around the third prong of the <u>Brunner</u> test because good faith, by its very nature, applies broadly to debtors regardless of their financial circumstances. <u>See</u> <u>Hedlund v. Educ. Res. Inst., Inc.</u>, 468 B.R. 901 (D. Or. 2012), <u>Ristow v. Educ. Credit Mgmt. Corp. (In re Ristow)</u>, BAP No. AZ-11-1376-DJuPa, 2012 WL 1001594 (9th Cir. BAP March 26, 2012). In contrast, the first prong of the <u>Brunner</u> test allows the bankruptcy court to determine the amount of student loan debt that prevents the debtor from maintaining a minimal standard of living and discharge only that amount.

In this case, the bankruptcy court did not abuse its discretion when issuing a partial discharge. The bankruptcy court refused to discharge $6,050 because Jorgensen received a windfall by not paying rent while she was in Paris. During Jorgensen's five and one-half months in Paris her income exceeded her expenses by $1,100, for a total of $6,050. The bankruptcy court found that Jorgensen did not satisfactorily explain why the excess $6,050 was necessary to maintain a minimal standard of living. The bankruptcy court also refused to discharge $1,995.02 because Jorgensen purchased a vehicle prior to her trip to Paris. The bankruptcy court found Jorgensen's car payment while she was in Paris was not necessary to maintain a minimal standard of living.

Nevertheless, the bankruptcy court found that, as to the remainder of Jorgensen's debt, each prong of the <u>Brunner</u> test was satisfied.

**B. Minimal Standard of Living**

Under the first prong of the <u>Brunner</u> test the debtor must

prove that she cannot maintain a minimal standard of living if she were required to repay the loans. Id. at 1088. The debtor must show more than simply tight finances. United Student Aid Funds v. Nascimento (In re Nascimento), 241 B.R. 440, 445 (9th Cir. BAP 1999). "In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." Id.

Here, the bankruptcy court found that Jorgensen's average monthly income was $3,750. The bankruptcy court also found that Jorgensen's necessary average monthly expenses were $4,100. The bankruptcy court concluded that Jorgensen's expenses were "essential . . . due to the nature of her employment and her serious health issues."

ECMC contends that the bankruptcy court's conclusion is erroneous because Jorgensen's budget contains unnecessary items such as a new car, extravagant food spending, new clothes, dry cleaning, travel, and miscellaneous expenses. ECMC contends that Jorgensen's budget does not constitute a minimal standard of living.

ECMC argues that courts have declined to discharge student loan debt where the debtor's budget included a new car, high clothing expenses, and extravagant food expenses. See In re Nascimento, 241 B.R. at 445 (holding that a debtor's expenses were not minimal because they included a hairdresser, chiropractor, and $544 car payment); Chapelle v. Educ. Credit Mgmt. Corp. (In re Chapelle), 328 B.R. 565, 570 (Bankr. C.D. Cal. 2005) (finding that a debtor's $100 recreation and $100 clothing expenses were "modest but perhaps not reasonable given

-11-

[her] student loan obligation and lack of full-time employment").

While a number of courts have declined to discharge student loans in similar circumstances, the bankruptcy court's refusal to require Jorgensen to further reduce her expenses in this case is not clearly erroneous. In re Rifino, 245 F.3d at 1088. The calculation of cost reductions are factual in nature and, as such, "is a matter properly left to the discretion of the bankruptcy court." In re Pena, 155 F.3d at 1112. Accordingly, we will not disturb those findings unless they are clearly erroneous. Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane), 287 B.R. 490, 496 (9th Cir. BAP 2002). A finding is clearly erroneous when the reviewing court's interpretation of the facts was illogical, implausible, or without support in the record. Hinkson, 585 F.3d at 1262.

Here, the evidence supports Jorgensen's purchase of a new car. Her old vehicle lacked proper alignment, functional air conditioning, and automatic windows. Her new vehicle is a reliable and inexpensive subcompact with a warranty.

Jorgensen's $650 monthly food expense is directly related to her health problems. Jorgensen testified that she doesn't digest fats properly because she suffers from pancreatic enzyme deficiency. Moreover, this Panel is not in a position to evaluate food expenses in Hawaii; that determination falls within the bankruptcy court's proper discretion.

Jorgensen's clothing expense is the result of her fluctuating weight after cancer. Once again, we refuse to opine about the clothing expenses for a professional female in Hawaii.

ECMC challenged several of Jorgensen's other expenses, all of which were de minimus.[3]

Accordingly, the bankruptcy court correctly determined that Jorgensen's expenses exceeded her income by $350.

## C. Additional Circumstances

The second prong of the Brunner test requires the debtor to show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." In re Brunner, 831 F.3d at 396. Additional circumstances are any circumstances that show the inability to repay is likely to persist for a significant portion of the repayment period. In re Nys, 308 B.R. at 444. "The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay." Id. A court may consider a number of factors not limited to the following: the debtor's age, training, physical and mental health, education, assets, and ability to obtain a higher paying job or reduce expenses. Id.

Here, the bankruptcy court concluded that "there is a significant chance her income will fall; she may be denied tenure and lose her current job, or her health may preclude her from working full time." ECMC contends that Jorgensen's cancer is not likely to return. ECMC, however, has not challenged

---

[3] For example, ECMC challenges Jorgensen's $50 per month travel expense to see her family once a year. ECMC also challenges Jorgensen's $85 miscellaneous expense which she uses for unpredictable expenses that arise throughout the year (new suitcases for example).

Jorgensen's various other health problems that imposed, and will continue to impose, a significant obstacle to her financial recovery. In addition, ECMC did not dispute Jorgensen's dubious employment circumstances.

ECMC contends that Jorgensen is the archetype of good health. ECMC cites Jorgensen's medical records which indicate she is free of disease and doing quite well with no evidence of recurrence. ECMC argues that Jorgensen did not satisfy her burden to show that recurrence is a probability, not a mere possibility. ECMC's challenge to Jorgensen's health is not persuasive because it does not address her overall health as an obstacle to financial improvement. For example, Jorgensen suffers from anemia which has reduced her energy levels. Jorgensen's doctor suggested that her energy may never return to normal. Jorgensen testified that when she returned to full-time employment she became increasingly fatigued. Consequently, Jorgensen asked her superiors to be relieved from one of her classes. Anemia is not Jorgensen's only ailment. Jorgensen takes prescription medication for hypothyroidism and high blood pressure.

In addition to her health concerns, Jorgensen's future employment prospects are uncertain. Jorgensen testified that she has had a "rough time" in her current position at the University of Hawai'i at Manoa. Jorgensen's research requires a lab which took her university four years to provide and had "a negative impact" on her. Jorgensen testified that her department split 50-50 on her recommendation for tenure.

The bankruptcy court considered all of these factors when

-14-

determining that Jorgensen met the second prong. Its findings are not clearly erroneous.

**D. Good Faith**

The third and final prong of the <u>Brunner</u> test requires the debtor to prove that she made good faith efforts to repay the loans or show that the forces preventing repayment are truly beyond her control. <u>In re Brunner</u>, 46 B.R. at 755. To determine good faith, the court measures the debtor's efforts to obtain employment, maximize income, minimize expenses, and negotiate a repayment plan. <u>In re Mason</u>, 464 at 884. Whether a debtor made payments prior to filing for discharge is also a persuasive factor in determining whether she made a good faith effort to repay her loans. <u>In re Pena</u>, 155 F.3d at 1114.

Here, the record supports the bankruptcy court's finding that Jorgensen is optimally employed and maximized her income. After obtaining her Ph.D. in geography, she worked as a visiting assistant professor of geography at Ohio University. Two years later, she started her current position as an assistant professor of geography at the University of Hawai'i at Manoa. While Jorgensen has applied for federal jobs, where she might increase her income, her efforts have been unsuccessful.

The record also supports the bankruptcy court's finding that Jorgensen made loan payments before filing for discharge and that she negotiated a repayment plan in good faith. Jorgensen made timely payments on her student loans from January 2002 until she entered forbearance in June 2010. ECMC offered to reduce her payment to $180 per month for 25 years through the Graduate Repayment Option. Jorgensen rejected the Graduate

-15-

Payment Option because she did not have the funds available to make the payments. She also testified that the Graduate Payment Option was not acceptable because it was based on her income, not her expenses. In an effort to resolve the matter, Jorgensen offered to pay ECMC $180 for 18 months. ECMC refused.[4]

Turning to the expense factor, Jorgensen's decision to purchase a new car before she went to Paris and her decision to obtain orthodontic treatment both weigh against a finding of good faith.[5] To be clear, Jorgensen's purchase of a new car was not improper; she certainly needed a new car and purchased a relatively inexpensive and economical vehicle. Her decision to purchase the vehicle before she left for Paris, however, was imprudent. As a result, she incurred several thousand dollars of a car payment expense without using the vehicle. The bankruptcy court properly accounted for her error by finding that the extraneous expense could not be discharged.

Jorgensen's decision to use her summer grant to pay for orthodontic treatment instead of paying her loans also weighs against minimizing her expenses. While Jorgensen testified that she had a problem with her bite, she did not introduce any evidence that the treatment was medically necessary. The

---

[4] At oral argument ECMC argued that Jorgensen's failure to accept the Graduate Repayment Option was de facto evidence of a lack of good faith. To accept this argument would write § 523(a)(8) out of the Code and bestow ECMC with absolute discretion to forgive debt without judicial review.

[5] ECMC also challenges several of Jorgensen's living expenses. As discussed earlier, the majority of these expenses are the result of her health problems, and therefore, beyond her control.

bankruptcy court's memorandum of decision, however, reflects that the court weighed this unwise decision against all other factors to determine whether the debtor made a good faith effort to repay.

While this case presents a close question on good faith, after considering all of the circumstances, we will not disturb the bankruptcy court's determination that Jorgensen made good faith efforts to repay her student loans.

## VI. CONCLUSION

Having determined the bankruptcy court's factual findings are not clearly erroneous and the bankruptcy court correctly applied the Brunner test, we AFFIRM.